[Crim. No. 1880. Third Dist. Nov. 9, 1944.]

THE PEOPLE, Respondent, v. EUGENE RAMOS, Appellant.

Percy Napton for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

PEEK, J.—From a verdict of the jury finding him guilty of the crime of robbery in the first degree, defendant has appealed to this court.

The sole question presented is whether certain comments of the trial judge regarding the evidence introduced by defendant in support of his claim of alibi constitute prejudicial error.

It is readily apparent that a determination of the issue so raised demands a careful and thorough examination of the entire record. The pertinent facts therein disclosed are as follows:

The complaining witness, one Floyd V. Surrette, testified that on the evening of December 15, 1943, while sitting at the bar in a tavern and gambling place known as Beltrami's in the town of Broderick, he was approached by defendant who asked him to buy him a bottle of beer and some cigarettes, which he did; that defendant told him he was not feeling well and asked Surrette to help him to his home; that while he was taking defendant to a taxicab stand the defendant struck him with a club, knocking him down; that two other men then arrived, one of whom and defendant again struck Surrette, knocking him unconscious; that while he was lying on the ground his billfold was removed from his pocket, the currency taken out and the billfold replaced; that the robbery occurred at approximately 8:30 o'clock in the evening.

Ray Kelly, a barkeeper at Beltrami's, identified defendant as the man whom he had seen with Surrette at the bar on the evening of the robbery; that the two men remained at the bar for fifteen or twenty minutes and then walked out together.

Thomas G. Wallace, a deputy sheriff, was called by the

prosecution and stated the defendant admitted to him that he had struck Surrette, and that while Surrette was lying on the ground another man came along, went through his pockets, took out a billfold and gave defendant $10.

Jack Ross, a garageman, a witness for the prosecution, testified that in response to a request from defendant he had talked to him at the county jail; that the defendant told him there were two other men with him at the time of the robbery; that one of the other men hit Surrette and that he [the defendant] was given $10. Ross further stated that the defendant then contradicted himself and said he was not at the scene of the robbery.

In his own behalf defendant testified that on the date of the robbery he was at the Sacramento County Hospital as a result of injuries sustained a few days prior thereto; that about the hour of 9:30 o'clock that evening his mother and a friend called for him and drove him to their home in Sacramento, and that he remained in bed the rest of the evening. He admitted telling the officers at the county jail that he had robbed Surrette; that his reason for such admission was the fact that he was so excited and nervous he did not know what he was saying. He further admitted the testimony given by him on his preliminary examination, that he was working at the home of Jack Ross in Walnut Grove and did not arrive home until 10 o'clock that evening, was a falsehood.

Defendant's mother, testifying in his behalf, stated that she went to the hospital about 9 o'clock on the evening of December 15th, and took him to their home. Rachael Ramos, thirteen years of age, a sister of defendant, and her friend Beatrice Ramirez, fourteen years of age, testified they saw the defendant when he arrived home on the evening of December 15th, at about the hour of 9:30 o'clock.

Miss Glenn Gibson, the record clerk at the Sacramento County Hospital, stated that according to the record of the hospital, which was introduced in evidence, the defendant was discharged at 9 o'clock a. m. December 15th; that he walked from the hospital at that time, and that the last meal furnished defendant was at 7 o'clock a. m. December 15th. She further testified that if the defendant remained at the hospital that day she did not know it; that if patients could not leave by themselves at the time of their release, a car and driver would be furnished by the social service department;

that rather than keep a patient waiting as long as testified by defendant and his mother, arrangements would be made to take him home; that the hospital had no facilities for keeping patients after being released.

The instruction of the trial judge, which defendant attacks as erroneous and prejudicial, was made after the formal instructions had been read to the jury, and was as follows:

"Now, Ladies and gentlemen of the jury, in passing upon the question of an alibi in this case the jury has the right to inquire as to whether or not the evidence in support of the alibi shows that the defendant and his mother had knowledge on the 14th day of December that he could go home on the next day and if the defendant had knowledge of the fact when he got up in the morning of the 15th that his mother was going to be unable to come and get him until eight or nine o'clock that evening, you have a right to consider if he knew those facts and knowing them, if he got up at seven o'clock in the morning of the 15th and dressed and had breakfast there at the hospital and if he remained there at the hospital all that day until eight-thirty or nine o'clock in the evening, when the practice of the hospital shows that it was not the custom or methods of the hospital attendants to permit someone to remain there at the hospital for that length of time without escorting them to their home. The jury has the right to inquire as to whether or not the evidence in this case shows that a man there at the Beltrami saloon informed the prosecuting witness—I will not attempt to pronounce his name—that he was ill and weak and did not feel well and would appreciate it if he would buy him a bottle of beer and a package of cigarettes, and you have the right to inquire if the evidence shows to your satisfaction that this man whom the prosecution claims was the defendant, asked the prosecuting witness to escort him to his home and if there was an understanding and agreement that the prosecuting witness would assist him to the Bridge House Cafe, where he would get a taxi and see that he got home. Now, the jury has the right to inquire if those things existed as testified to by the prosecuting witness, what connection, if any, does that have with the testimony of the defense showing that the defendant had been injured on the 13th day of December and had spent the interim between the 13th of December and the time of this alleged crime, at the County Hospital for head injuries that he

had received in a poolroom. Now, the Court, in giving you that advice, is not passing upon the weight of anyone's testimony, or upon the guilt or innocence of the defendant, or on the value of any of the evidence in the case, but is only stating that the jury has the right to inquire as to all of those circumstances in reaching your decision as to whether or not this defense of an alibi is a good defense or whether it is not, in arriving at your verdict as to the guilt or innocence of this defendant.''

The court did not say that the jury ''must'' or ''should'' conclude that certain facts were true or false; it merely stated that the jury had the ''right to inquire as to all of those circumstances'' in reaching its verdict.

Prior to the giving of the attacked instruction the jury was fully and fairly instructed by the court that the weight and sufficiency of the evidence and the credibility of the witnesses were solely within the province of the jury. The court also fully instructed the jury upon the defense of alibi.

However, it is defendant's contention that the jury must be specifically informed that it is not the opinion expressed by the court which should be followed but that it is the opinion of the jury itself, and that a reading of the comments of the trial judge in the light of article VI, section 19 of the Constitution discloses that the statement exceeded the latitude allowed by law.

In the case of *People* v. *Ottey* (1936), 5 Cal.2d 714 [56 P. 2d 193] a situation quite comparable to that which is now before us was presented. The court there held that no hard and fast rule determinative of what a judge may or may not say to a jury in commenting upon the evidence and the credibility of the witnesses can be laid down, and that in the final analysis the determination of such question must depend upon all of the circumstances of the case.

Applying this well established rule to the situation herein presented we find no implication that the verdict of the jury was prejudicially influenced by the comments of the trial court. Particularly is this true in view of the strong and convincing evidence of the defendant's guilt. The statement was neither argumentative nor contentious but to the contrary was temperately and fairly made and warranted by the evidence and the constitutional provision previously mentioned. (*People* v. *DeMoss* (1935), 4 Cal.2d 469, 477 [50 P.2d 1031].)

By virtue of the disposition of the issues raised by the defendant, the contention of respondent relating to the propriety of this appeal becomes wholly immaterial.

The judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.