[Crim. No. 1056. Fourth Dist. Apr. 24, 1956.]

THE PEOPLE, Respondent, v. WILLIAM STEPHEN WELLMAN, Appellant.

Barton C. Sheela, Jr., under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Emmet J. Seawell, Deputy Attorney General, for Respondent.

MUSSELL, J.—The defendant was charged with the crime of robbery in that on or about August 10, 1955, he did wilfully, unlawfully, feloniously and by means of force and fear take approximately $100 from one Lewis L. Koers. The information further charged the defendant with having been convicted on two prior occasions of the offenses of robbery and assault with a deadly weapon. Pleas of not guilty and not guilty by reason of insanity were entered and on October 4, 1955, a jury returned a verdict finding the defendant guilty of robbery while armed with a deadly weapon and fixing the degree of the crime as robbery of the first degree. On October 7, 1955, the same jury found defendant to have been sane on the 10th day of August, 1955, at the time of the commission of the offense alleged in the information. A motion for a new trial was denied and defendant was sentenced to the state prison for the term prescribed by law. He appeals from the judgment of conviction, the sentence, and the order denying his motion for a new trial.

On August 10, 1955, at about 12:30 a. m., the defendant entered a bar known as the Sahara Club in La Mesa, San Diego County. He held a handkerchief to the left side of his face with his left hand and in his right hand he had a loaded .32 calibre automatic. He stepped up to the bar and upon being asked by the bartender (Mr. Koers) what he would have, replied "I want everything, all the money you've got in that register." Mr. Koers saw the gun pointed at him and replied "Yes, sir, I will get it." Thereupon Koers obtained the currency out of the cash register, which was a few feet away, placed the bills in two piles on the counter in front of the defendant, and upon being advised by the defendant that it was not enough, he wanted more, he returned to the register, took therefrom a handful of "halves and quarters" and laid them on the counter close to the bills in front of the defendant. The defendant then said, "I want more, that isn't enough." Mr. Koers, who was wisely cooperative under the circumstances, turned to make a third trip to the register when one of the patrons of the bar, a Mr. Gerald

Lessard, struck the defendant on the back of his head with a metal disk which he, Lessard, had been using in a shuffleboard game. Defendant was then thrown to the floor by Lessard and a companion. Lessard then sat on the defendant until an ambulance arrived, at which time the defendant was taken away on a stretcher.

Appellant argues that the only substantial issue raised at the trial on the robbery charge was whether a complete robbery was committed rather than an attempt to commit such offense, and that the trial court erroneously removed this issue of fact from the jury by his comments on the evidence.

The argument that merely an attempt to commit robbery was shown is based upon the assumption that the defendant did not obtain possession and control of the money involved. In *People* v. *Quinn*, 77 Cal.App.2d 734, 737 [176 P.2d 404], this court said:

"Section 211 of the Penal Code defines robbery as follows: 'Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.' This requires the taking of personal property which is in the possession of another from his person or immediate presence but does not require that this be done by the use of the hands of the person doing the taking. Where there is an intent to so take the property while some asportation is required it is well settled that the distance it is taken may be very small. (*People* v. *Clark*, 70 Cal.App.2d 132 [160 P.2d 553].) A very slight removal is sufficient. (*Driggers* v. *State*, 96 Fla. 232 [118 So. 20].) It would be a strained and unreasonable construction of the language of the statute to interpret it as necessarily requiring the taking of the stolen property into the hands of the one committing the robbery."

In the instant case the bills were placed in front of the defendant in two piles and during the time the bartender was making the second trip to the register, the bills were "fanned out." As there was no one in close proximity to the defendant at the time, the jury could and apparently did reasonably infer from the circumstances that the defendant "fanned out" the bills and obtained both constructive and actual possession thereof.

The comments of the trial judge which appellant claims were prejudicially erroneous are as follows:

"The main point in this trial here seems to center around the term of asportation. The only thing I can say to you

under the evidence, follow the indications of the evidence we have here. The defendant came in and directed Mr. Koers to bring him the money and, according to Mr. Koers, why the defendant had a gun in his hand and, of course, anybody with a gun in his hand is always quite emphatic in his demands. Nobody is going to resist him. So as far as asportation is concerned, if Mr. Koers was acting against his will under the sole direction and control of the defendant in this case and he transported the money from the safe, or from the cash register, to the counter and thereafter the property was in the immediate presence and control and possession of the defendant, why, of course, the crime would be completed.

"Now I ask you, you put yourselves in Mr. Koers' position. I always feel that you can solve these matters better if you put yourself in the position of the defendant and also in the position of the victim. Put yourself on either side of the category and try to figure out what happened and what the impulses were. For instance, if Mr. Koers brought this money over and laid it down, say the paper money, and he laid it down on the counter in front of the defendant, he couldn't very well be expected to put it in the defendant's pocket or in his wallet for him; he wasn't going to get that close to him, and I think after he laid the money down he wasn't in a very good position of saying, 'Well, Mister, I am sorry, I think I gave you too much money, I want part of it back.' I don't think he was in that position. Under that circumstance it is up to you to determine who had control of this money after Mr. Koers laid it down. Was it still in the control and possession of Koers or in the control and possession of the defendant in this case. That is the thing you are going to have to determine. Of course, you can be a voluntary agent or involuntary agent. You may determine that in this particular case, under the evidence, of course.

"I will define for you the term of robbery, and also an attempt, and I trust when I get to those terms you will listen carefully so as to get the distinction between completed robbery and attempt."

We find no prejudicial error in the quoted comments. The trial court stated to the jury that if the money was in the immediate presence, control and possession of the defendant when it was placed on the counter, the crime would be completed, and that the jury had to determine who had control of the money after it was placed on the bar. The jury was not advised that it must find that the defendant had received

control or custody of the money, and the court stated that it would later define the term of robbery and also an attempt and admonished the jury to listen carefully so as to get the distinction between robbery and attempt. Robbery and an attempt to commit crime were correctly defined in later instructions given by the court. Where, as here, the court fairly and correctly instructed the jury with reference to all issues raised by the pleadings or produced by the evidence and did not attempt at any time to direct the return of a particular verdict, the comments made did not constitute prejudicial error. (*People* v. *Stanhope,* 37 Cal.App.2d 631, 636 [99 P.2d 1075].) In *People* v. *Robinson,* 73 Cal.App.2d 233, 238 [166 P.2d 17], the court quoted from *People* v. *Ottey,* 5 Cal.2d 714, 728 [56 P.2d 193], as follows:

" 'There is no merit to the contention that the court, if it venture to comment on the evidence or the testimony of witnesses or of any witness, must sum up all the evidence and the testimony both favorable and unfavorable. There is no such injunction, express or implied, in the language of the Constitution, and none that would compel it under established rules in other jurisdictions. The provision in the Constitution expressly permits the court to "make *such* comment on the evidence and the testimony and credibility of any witness *as in its opinion is necessary for the proper determination of the case.*' The court may therefore exercise its own discretion in respect to what comment it will make, so long as it does not withdraw any material evidence from the consideration of the jury . . . and does not attempt to control the verdict by a direction.' "

The trial court herein did not attempt to control the verdict by direction or withdraw issues of fact from the jury as claimed by the appellant.

■ Appellant next contends that in the trial on his plea of not guilty by reason of insanity the court unreasonably restricted him in his right to cross-examine a witness and to argue his case to the jury. These contentions are without merit. In this connection appellant refers to the testimony and cross-examination of two doctors called by the prosecution, Dr. Peterson and Dr. Gericke. The record shows that these witnesses were cross-examined at length by defendant's counsel and that he announced to the court that he had no further questions to ask either of them. ■ While the court limited the argument to ten minutes to the prosecution and an equal time for the defense, the record does not show

that defendant's counsel objected to the limitation or that he desired further time. ██ Appellant contends that he had the right to make the closing argument to the jury. However, section 1093, subdivision 5, of the Penal Code provides that counsel for the People have the right to open and close the argument to the jury. There was no error in the trial court's ruling that respondent had the right to open and close its case.

██ Finally, appellant argues that the evidence as to whether the crime of robbery as distinguished from attempted robbery was committed was based entirely on circumstantial evidence and that the jury should have been instructed as to such evidence. The record shows that there were six eyewitnesses to the robbery and the circumstantial evidence was merely incidental and corroborative of the direct evidence of the crime. Under such circumstances the court was not required to instruct the jury upon the rules of law applicable to such evidence. (*People* v. *Jerman,* 29 Cal.2d 189, 197 [173 P.2d 805].

The judgment and order denying new trial are affirmed.

Barnard, P. J., and Griffin, J., concurred.