[Crim. No. 6146.    In Bank.    June 30, 1958.]

THE PEOPLE, Respondent, v. WILBERT FELIX FRIEND, Appellant.

John R. Sorbo, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

GIBSON, C. J.—Defendant previously appealed from a judgment which imposed the death penalty in accordance with a jury verdict. We upheld his conviction of murder of the first degree, but, because of errors relating to the issue of punishment, we remanded the cause for the sole purpose of redetermining that issue. (*People* v. *Friend*, 47 Cal.2d 749, 772 [306 P.2d 463].) On retrial, the jury fixed the penalty at death, and the case is again before us automatically. (Pen. Code, § 1239, subd. (b).) The only question presented is whether defendant was deprived of a fair trial by the judge's comments on the evidence.

One morning in 1936, Ruth Muir's body was found on the beach in La Jolla about a block from the home of her parents. Her face was covered with blood, and a bench leg which had been used as a club lay nearby. An autopsy surgeon discovered numerous bruises, abrasions and lacerations on the body and head and determined that death had been caused by fracture of the skull and multiple injuries. Defendant was living in a tent on the beach, and, when the police questioned him, he denied knowing anything about the killing and was released. The crime remained unsolved until 1955, when defendant, an ex-convict who was 44 years of age, confessed to having committed it.

In the five years following the killing, defendant was convicted of burglary, contributing to the delinquency of a minor,[1] and rape. In connection with his conviction of rape, defendant was placed on probation for 25 years on condition that he serve six months in jail and undergo an orchidectomy. This operation was performed in 1941. Thereafter, until 1955, defendant's record was clear with the exception of a $20 fine for stealing a relative's dog in 1946 and an arrest in 1952 for causing a disturbance while drunk in a bar.

In 1955 defendant went to Detroit for two months in violation of the terms of his probation. About a week after he returned to California, his probation officer telephoned him, arranged to meet him in a few days, and told him that he had violated his probation and that there was a warrant for his arrest. According to defendant's sister-in-law, when he hung up the telephone, he said, "Well, murder will out," mentioned the existence of a warrant, and stated that he thought that he would take his suitcases and "start traveling." The following evening, after spending several hours in a bar, defendant telephoned a newspaper reporter and said that he had killed Miss Muir. The record does not disclose the other circumstances leading to defendant's arrest.

Upon being taken into custody, defendant told the police that he had committed the crime but that he had not molested the victim or taken any valuables from her. In subsequent interviews he stated that he had been drinking and had lost his money playing pool and that, about 9 or 10 p. m., he went to the beach looking for someone to rob because he wanted money to buy more drinks. After removing a leg from a picnic bench to use as a club, he saw a woman who was seated facing the ocean, walked up behind her, and struck her a heavy blow on the head, knocking her to the ground. He then dragged her to a nearby gully, where he struck her several times about the face with his fists. He cut the laces of her corset with a knife and raped her, or tried to rape her. In explanation of his delay of 19 years in confessing the crime, he said that he wished to avoid hurting his parents and his wife, who were now dead.

Defendant did not take the witness stand at the first trial. At the second trial he testified that he had not been troubled by an excessive sex urge after undergoing the orchidectomy.

[1]Defendant was charged with misconduct of a sexual nature with two little girls and pleaded guilty to one count of contributing to the delinquency of a minor.

He denied that, when he received the telephone call from his probation officer, he made the statements which his sister-in-law attributed to him or that he confessed because he thought the arrest warrant mentioned by the officer related to the killing. According to defendant, he decided to confess two weeks earlier in Detroit. He testified, ''One reason I was tired, that is why I turned myself in. Seemed like I was running all these years, trying to get something settled in my mind. That was one way, to come out with the truth, because I had read once or twice in the Bible where the truth would set you free, and after I confessed to this last, this murder, this error in my life, well, I was free in my mind, although not in my body. . . . It seemed to me there was only one way out and that was to tell the truth about it. At least you can't go wrong by telling the truth. I could see that. I can't see where I have lost anything by telling the truth, although I did sit up there close to the gas chamber for eighteen or nineteen months. That kind of opened my eyes up to what I had done.''

Before giving formal instructions to the jury, the trial judge made the following remarks: ''Under the law, ladies and gentlemen of the jury, and under the Constitution, I am entitled to comment on the evidence in this case. I am going to make a few comments and tell you certain things you can consider, and, of course, anything I say is not binding on you; you can disregard it. I will just point out various things and if it coincides with your views, accept it; if it doesn't, why reject it.

''The argument of counsel in this case is not evidence. Neither is anything I tell you evidence in this case. Of course, both sides in this case put forward their best foot to try to get you to see their side of the case. Now you have heard all the evidence. You are the judges of the evidence and it is up to you to decide what should be done with the defendant in this case.

''Now, of course, this was a brutal murder. You heard all the facts, the testimony here of the People, and the defendant took the witness stand. Now it is true that he called the newspapers and said he had committed this crime. He did say that the second time he called the newspapers he had no recollection of his call. How intoxicated he was the night he called the newspaper I do not know.

''You saw the defendant on the witness stand on two different occasions when he wouldn't answer the questions on cross-

examination. Now it has been stated here he made a confession. When certain questions were asked him why he didn't want to answer them. When I ordered him to answer them he said, 'I don't remember,' or 'I don't know.' Those were questions relative to the rape and relative to the molesting of the minor children several years later and the rape on the elderly woman on which he was on probation at the time he was picked up for this offense.

"Now you can consider, of course, the various items of his confession, his history throughout his life, both before and after this event here, the fact that he had this operation. Now it has been said he wasn't in any trouble since the operation, no serious trouble. Well, when we put people on probation—he was on 25 years probation—we expect them to comply with the law and if they violate it in any serious degree probation is revoked and the defendant is sentenced to the State Prison or County Jail, depending upon the character of the offense. Probation is a deterrent; at least I have always considered it such. You put a man on probation and you figure he is going to behave himself to a certain extent. Whether or not his behavior was the result of being on probation or the result of the operation, or a combination of both, is up to you to determine.

"You saw the defendant on the stand. You may consider whether he had any remorse for this crime. I heard his testimony. I seemed to feel as I heard it that Mr. Friend was concerned mostly about his own plight and not what he had done. He didn't want to go to Capistrano on the day he went up there, according to his own statements. He made the statement that the dead would take care of themselves.[2] So I suppose they do. But that was his statement. It is up to you to determine whether he showed any remorse or whether he has told you everything from the witness stand that he knew.

"He was the only one there at the scene that survived and the only one that could give you the full details, if he saw fit so to do, but he said he didn't remember much about the rape, didn't remember much about this or about that.

"Now you may take all those things into consideration. As

---

[2]This comment apparently refers to testimony by defendant that on the day following the telephone call from his probation officer he agreed to go with his brother and sister-in-law to decorate his mother's grave, although he did not want to go, and at that time stated that he "kind of more or less believed that when a person was buried you forget about them, let the dead take care of the dead. . . ."

I said, the penalty is entirely up to you and let the evidence and your conscience be your guide.''

The question to be determined is whether the judge exceeded his authority in making the foregoing comments.

Section 19 of article VI of the Constitution, as amended in 1934, provides: ''The court . . . may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case. The court shall inform the jury in all cases that the jurors are the exclusive judges of all questions of fact submitted to them and of the credibility of the witnesses.'' Similar provisions are contained in statutes. (Pen. Code, § 1093, subd. 6, § 1127.)

It seems clear from the use of the word ''comment'' in section 19 of article VI that a trial judge is empowered to do more than merely summarize the evidence and that he may analyze the testimony critically, giving his opinions for the guidance of the jury.[3] If there can be any doubt in this respect, it is put to rest by resort to the history of the section and to the decisions which have considered the scope of the power conferred.

Prior to its amendment in 1934, section 19 of article VI provided that a judge could ''state the testimony,'' as well as declare the law, so that the change in language would be meaningless if viewed as permitting only such action. The purpose of the amendment is disclosed by the ballot argument in its favor, which stated, ''This measure . . . enables the trial judge to comment to the jury on the facts of the case; to give the jurors his analysis of the evidence and to express his opinion on the merits of the case, but informing them at the same time, that his views are advisory only. . . .''[4]

By three cases which this court decided shortly after

---

[3]The noun ''comment'' is defined by Webster's New International Dictionary, 2d ed. unabridged, 1942, as follows: ''2. A note or observation intended to explain, illustrate, or criticize the meaning of a writing. . . . 3. Act or instance of commenting; remark or criticism. . . .'' Further explanation is given in Webster's Dictionary of Synonyms, 1942, p. 695, under the general heading of ''remark,'' where it is said: ''Comment stresses interpretation, as by bringing out what is not apparent or by adding details that help to clarify. . . . Very frequently, in modern use, the word implies unfavorable interpretation. . . . Comment applies to a remark, or an observation made in criticism, in interpretation, or in elucidation of something. . . .''

[4]It should be noted in this connection that the amendment was submitted to the voters together with another proposal, which was also adopted, namely, an amendment to section 13 of article I giving the judge the right to comment on a criminal defendant's failure to testify.

1934, it was established that the intent of the voters was to make the judge a real factor in the administration of justice, rather than a mere referee, that the constitutional amendment removed the prior prohibition against his power to comment, and that he is no longer confined to a colorless recital of the evidence but may analyze the testimony and express his views with respect to its credibility. (*People* v. *De Moss,* 4 Cal.2d 469 [50 P.2d 1031] [upholding the narration of circumstances tending to militate against the defendant's claim that he loved the victim and that the shooting was accidental]; *People* v. *Ottey,* 5 Cal.2d 714 [56 P.2d 193] [upholding, among other remarks relating to the defendant's testimony, the comment that "things don't happen that way"]; *People* v. *Gosden,* 6 Cal.2d 14 [56 P.2d 211] [upholding various remarks including the judge's opinion that the defendant's innocent purpose in signing the victim's name to an insurance application had "not to my mind been satisfactorily explained" and that the defendant's explanation for purchasing strychnine did not "appeal to my mind as reasonably consistent with an honest mind"].) ■ There is a statement in *People* v. *O'Donnell,* 11 Cal.2d 666, 671 [81 P.2d 939], that a "trial judge is rigorously prohibited from action or words having the effect of conveying to the jury his personal opinion as to the truth or falsity of any evidence." The opinion in the O'Donnell case does not mention section 19 of article VI. The quoted statement, which was made without the citation of any authority, is in conflict with the constitutional language expressly authorizing a judge to comment on "the credibility of any witness," and it is disapproved.

■ A judge's power to comment on the evidence, of course, is not unlimited. (*People* v. *Dail,* 22 Cal.2d 642, 658 [140 P.2d 828]; *People* v. *Patubo,* 9 Cal.2d 537, 543 [71 P.2d 270, 113 A.L.R. 1303]; *People* v. *Ottey,* 5 Cal.2d 714, 722 et seq. [56 P.2d 193]; *People* v. *Robinson,* 73 Cal.App.2d 233, 237 [166 P.2d 17]; *People* v. *Ramos,* 66 Cal.App.2d 731, 735 [152 P.2d 758]; *Kahn* v. *Commercial Union Fire Ins. Co.,* 16 Cal.App.2d 42, 45-47 [60 P.2d 177].) He may not withdraw material evidence from the jury's consideration or distort the testimony, and his comments should be temperately and fairly made, rather than being argumentative or contentious to a degree amounting to partisan advocacy. The jury, as required by the constitutional provision, must remain as the exclusive arbiter of questions of fact and the credibility of witnesses,

and the judge should make clear that his views are not binding but advisory only.

The extent to which a judge is free to comment on the evidence is shown by the fact that it has frequently been recognized that a judge may express his opinion as to the guilt or innocence of the defendant, so long as the province of the jury as defined by the constitutional section is not invaded. (*People* v. *Rupp*, 41 Cal.2d 371, 383 [260 P.2d 1]; *People* v. *Daugherty*, 40 Cal.2d 876, 893 [256 P.2d 911]; *People* v. *Dail*, 22 Cal.2d 642, 658-659 [140 P.2d 828]; *People* v. *Warren*, 16 Cal.2d 103, 114 [104 P.2d 1024]; *People* v. *Eudy*, 12 Cal. 2d 41, 47 [82 P.2d 359]; *People* v. *Ottey*, 5 Cal.2d 714, 729 [56 P.2d 193]; *People* v. *Yokum*, 145 Cal.App.2d 245, 258 [302 P.2d 406]; *People* v. *Huff*, 134 Cal.App.2d 182, 187 [285 P.2d 17]; *Pomerantz* v. *Bryan Motors, Inc.*, 92 Cal.App.2d 114, 119 [206 P.2d 440]; *People* v. *Busby*, 40 Cal.App.2d 193, 202 [104 P.2d 531].)[5]

It is also settled that a judge may restrict his comments to portions of the evidence or to the credibility of a single witness and need not sum up all the testimony, both favorable and unfavorable. (*People* v. *Gosden*, 6 Cal.2d 14, 27-28 [56 P.2d 211]; *People* v. *Ottey*, 5 Cal.2d 714, 728 [56 P.2d 193]; *People* v. *DeMoss*, 4 Cal.2d 469, 476-477 [50 P.2d 1031]; *People* v. *Wellman*, 141 Cal.App.2d 101, 106 [296 P.2d 82]; *People* v. *Garcia*, 124 Cal.App.2d 822, 830 [269 P.2d 673]; *People* v. *Robinson*, 73 Cal.App.2d 233, 238 [166 P.2d 17]; *People* v. *Keys*, 62 Cal.App.2d 903, 914 [145 P.2d 589]; *People* v. *King*, 30 Cal.App.2d 185, 205 [85 P.2d 928]; see *People* v. *Dail*, 22 Cal.2d 642, 657-658 [140 P.2d 828]; *People* v. *Ernst*, 121 Cal.App.2d 287, 295 [263 P.2d 114]; *Kahn* v. *Commercial Union Fire Ins. Co.*, 16 Cal.App.2d 42, 47 [60 P.2d 177].) Any statements to the contrary in *People* v. *Hooper*, 92 Cal.App.2d 524, 531 [207 P.2d 117], *People* v. *Mason*, 72 Cal.App.2d 699, 711 [165 P.2d 481], and *People* v. *Talkington*, 8 Cal.App.2d 75, 99 [47 P.2d 368], are disapproved.

---

[5]The cited decisions do not always use the same language to describe the limitation on a judge's power to express his opinion regarding guilt or innocence. For example, instead of saying, ''so long as the province of the jury as defined by the constitutional section is not invaded,'' some courts have used the qualification ''in proper cases,'' but it seems clear that nothing substantially different is meant. *People* v. *Ottey*, 5 Cal.2d 714, 729 [56 P.2d 193], which is the leading case on the point, employed the phrase, ''so long as the province of the jury as defined by the constitutional section is not invaded,'' and it has usually been cited as authority in the subsequent decisions, including those which use different qualifying language.

*Sanguinetti* v. *Moore Dry Dock Co.*, 36 Cal.2d 812 [228 P.2d 557], did not involve the power to comment on the evidence but the making and granting, in the presence of the jury, of a motion to amend the complaint so as to increase the prayer for damages. None of the language there used was intended to limit the commenting power, as the opinion made clear by pointing out that there was no contention that section 19 of article VI was applicable. (36 Cal.2d at p. 823.)

█ There is no justification for holding that a judge has a lesser right to comment on the evidence where punishment is involved than where matters relating to guilt are in issue, and the same principles should be applied in determining whether the power has been properly exercised. Section 19 of article VI refers to "the evidence" generally, without setting forth any distinction or qualification as to the issue upon which the evidence bears. The evidence is, of course, important in fixing the punishment, and on the prior appeal in this case it was pointed out that "the trend is toward the more liberal admission of evidence pertinent only to the selection of penalty." (*People* v. *Friend*, 47 Cal.2d 749, 764 [306 P.2d 463].) Obviously, the judge's analysis of evidence relating to punishment may be as necessary to assist the jury as his remarks on testimony touching upon guilt, so that the power to comment promotes the purpose of the constitutional amendment as much in one situation as in the other. It is true that the jury has exclusive discretion as to the punishment to be imposed, but no distinction can be made on this ground since the jury is also the exclusive judge of all questions of fact relating to guilt. In short, regardless of which issue is being tried, the respective functions of judge and jury as to factual questions are the same, and neither the language of the constitutional amendment nor the purpose underlying its adoption permits the imposition of different limitations on the power to comment on the evidence.

█ In the present case the judge fully complied with the requirement that the jury be informed that his comments were not binding upon them. As we have seen, he pointed out at the beginning of his comment that the jurors were free to reject anything which did not coincide with their views, that they were the "judges of the evidence," and that it was up to them to decide what was to be done with defendant. At the conclusion of his remarks the judge said, "The penalty is entirely up to you and let the evidence and your conscience be your guide."

Moreover, in the course of the formal instructions which were subsequently given upon the law, the jurors were told: "In fixing the penalty, you are entirely free to act according to your own judgment. Your discretion in the selection of penalty is in no way circumscribed or limited by law. It is an absolute discretion. For example, there is no rule of law which calls for a sentence of death simply because you find that there are no mitigating or extenuating circumstances. Similarly, there is no rule of law which calls for a sentence of life imprisonment simply because you find that there are no aggravating circumstances." The jury was also instructed that the choice must be a meaningful one, fundamentally based on the evidence, but that weight could be given to "any consideration whatever" which in the light of the evidence seemed important to the jury, and the judge, stressing that he was not attempting to indicate all of the matters which might be taken into account, listed examples of what might be considered, including many of the factors mentioned in *People* v. *Friend*, 47 Cal.2d 749, 768 [306 P.2d 463]. These instructions sufficiently set forth the principles declared on the earlier appeal, and no claim is made that any of them was incorrect.

▉ It is urged that the judge misstated the evidence in the comment to the effect that defendant had on two occasions refused to answer questions "relative to the rape and relative to the molesting of the minor children several years later and the rape on the elderly woman" and that defendant was ordered to answer by the court and said, "I don't remember" or "I don't know." The record discloses that the two questions which the court directed defendant to answer did not relate to rape or to molestation of children. The first of the two questions pertained to the location of two of defendant's suitcases at about the time of the telephone conversation with his probation officer, and, after being directed to answer by the court, defendant stated that he did not recall. The second question, which referred to the night of the murder, was, "Did you go down to the La Jolla Park?" and, upon the court's direction, defendant replied, "I think I did." The record also shows, however, that, in response to a number of questions relating to the details of his sexual misconduct, defendant answered that he did not remember. The comment of the judge, therefore, was correct with respect to the general types of questions as to which defendant testified he could not remember. It was inaccurate as to which questions defendant at first refused to answer and was then directed to

answer, but this constitutes no more than a minor inaccuracy which could not have prejudiced defendant.

There was no error in the comment, "It is up to you to determine whether he showed any remorse or whether he has told you everything from the witness stand that he knew." It was preceded by the direction that the jury "may consider" whether defendant had any remorse and was followed by the remark that "you may take all those things into consideration." These are correct statements of the law, in accord with the principles discussed in *People* v. *Friend*, 47 Cal.2d 749 [306 P.2d 463]. The jury was thus informed that these matters could properly be considered; it was not told that a determination of them, one way or the other, was required in order to select the penalty; and, as stated above, the court subsequently instructed that a finding of either mitigating or aggravating circumstances was not necessary in choosing between death or life imprisonment as the punishment.

It is not true, as asserted by defendant, that the comments were limited to evidence which was unfavorable to him. The judge pointed out that defendant had made a confession, that he had undergone the orchidectomy, that the jury could consider his history after the operation, and that it did not appear that he had been in any serious trouble since then. It may also be noted that the judge did not comment on some evidence which was very unfavorable to defendant. For example, no reference was made to the testimony of defendant's sister-in-law or to the extremely damaging inference permitted by it. Moreover, even if the comments as a whole are regarded as placing the greater stress on matters adverse to defendant, it is settled, as we have seen, that a judge need not sum up all the evidence, both favorable and unfavorable.

The judge at no time expressed an opinion as to the penalty which should be imposed, and none of his statements could be reasonably regarded as contentious to a degree amounting to partisan advocacy. He not only mentioned factors favorable to defendant and pointed out that the jury could consider them but, in addition, expressed his views with respect to adverse considerations in temperate language. Finally, it should again be emphasized that he made clear that the comments were advisory only and that the question of penalty was entirely within the absolute discretion of the jury.

Under the circumstances, to hold that the judge's comments warrant a reversal would require a determination that a

judge has a lesser right to comment on evidence relating to punishment than on evidence affecting guilt, and, as previously discussed, no such distinction can be made without ignoring the authorization contained in section 19· of article VI of the Constitution. With the exception of the minor inaccuracy noted above, which could not have been harmful, the comments of the judge were in keeping with the Constitution and the established limitations on his power, and there is no sound basis for concluding that the question of penalty was not fairly tried.

The judgment and the order denying a new trial are affirmed.

Shenk, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J., Dissenting.—It is my view that the trial judge's comments to the jury in the case at bar go far afield from the court's proper function, exceed the court's power to "make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case" (Cal. Const., art. VI, § 19) *as that power relates to the selection of penalty for first degree murder,* and invade a province which by law is solely that of the jury.

The most serious departure by the trial judge (and by the majority) from the law as spelled out in our previous decisions (see *People* v. *Friend* (1957), 47 Cal.2d 749, 766 [13] [306 P.2d 463]; *People* v. *Green* (1956), 47 Cal.2d 209, 218-232 [7-10] [302 P.2d 307]; see also *People* v. *Hall* (1926), 199 Cal. 451, 456-458 [249 P. 859]; *People* v. *Bollinger* (1925), 196 Cal. 191, 207 [237 P. 25]; *People* v. *Leary* (1895), 105 Cal. 486, 496 [39 P. 24]) is that here the trial judge made unmistakably clear to the jury the fact that in his opinion they should fix the punishment at death. The majority purport to meet this issue by holding that "The extent to which a judge is free to comment on the evidence is shown by the fact that it has frequently been recognized that a judge may express his opinion as to the guilt or innocence of the defendant . . . There is no justification for holding that a judge has a lesser right to comment on the evidence where punishment is involved than where matters relating to guilt are in issue, and the same principles should be applied in determining whether the power has been properly exercised." Contrary to the majority's quoted declaration, there *is* justification—indeed,

not only justification but necessity, if we are to abide by the law previously enunciated—for holding that "a judge has a lesser right to comment on the evidence where punishment is involved than where matters relating to guilt are in issue." The difference is an obvious one. Guilt must always *depend on evidence and only on evidence,* and the judge may comment on evidence; hence, he may indicate an opinion as to the fact which depends on evidence. But where punishment (in a first degree murder case) is involved the selection of the penalty need not depend in any degree whatsoever on the evidence and, under the legislative plan as we have construed it, must always include exercise of an "absolute" or unfettered discretion.

As we unqualifiedly enunciated in *People* v. *Friend* (1957), *supra,* 47 Cal.2d 749, 764-765 [11], the discretion of the jury as to penalty in a first degree murder case is absolute[1] and may be resolved on considerations of pure conjecture, sympathy, apprehension, etc.; it is the law (pp. 767-768 of 47 Cal.2d) "that insofar as selecting the penalty is concerned (as between the two alternatives [of life imprisonment or death]) the law does not itself prescribe, nor authorize the court to innovate, any rule circumscribing the exercise of

[1]This holding was by no means new to the law. In *People* v. *Green* (1956), *supra,* 47 Cal.2d 209, 218 [5], we declared: "There has never been any suggestion or intimation within the language of the statute since its 1874 amendment [section 190 of the Penal Code as amended in 1874 provided that "Every person guilty of murder in the first degree shall suffer death or confinement in the state prison for life, at the discretion of the jury trying the same . . ."] that the discretion of the jury was conditional on, or had to be guided by, any particular circumstances . . ." (See also *id.,* pp. 218-219 [7] of 47 Cal.2d.) And in *People* v. *Bollinger* (1925), *supra,* 196 Cal. 191, 207, on the authority of *People* v. *Leary* (1895), *supra,* 105 Cal. 486, we held: "It is clear beyond question that by the language of the amended section [Pen. Code, § 190, as amended by Stats. 1873-1874, p. 457] . . . two changes were made in the law as to the punishment for murder in the first degree—first, that the punishment may be *either* death or life imprisonment; and, second, that the discretion of determining which punishment shall be imposed was vested in the jury alone. For . . . the law places no restriction upon the jury's exercise of such discretion, nor does it attempt to confine its exercise to cases presenting palliating or mitigating circumstances. . . . The legislature has 'confided the power to affix the punishment within these two alternatives to the absolute discretion of the jury. . . .' (*People* v. *Leary* [1895, *supra*], 105 Cal. 486, 496 [39 P. 24].)" And as we stated in the Green case (pp. 225-226 of 47 Cal.2d), "The above quotation from the Hall case (199 Cal. 451, 456-458) [the quotation from the Hall case appears at pp. 224-225 of the Green case], together with that portion of the Bollinger case (196 Cal. 191, 207) which quotes section 190 of the Penal Code (as amended in 1873-1874) with the declaration that its meaning is 'clear beyond question,' correctly states the law; the decision we make today at last requires compliance with that law."

their discretion, but, rather, commits the whole matter of its exercise to the judgment and the consciences of the jury; that in deciding the question whether the accused should be put to death or sentenced to imprisonment for life it is within their discretion alone to determine, each for himself, how far he will accord weight to the considerations of the several objectives of punishment, of the deterrence of crime, of the protection of society, of the desirability of stern retribution, or of sympathy or clemency, of age, sex, human passion, ignorance or weakness, or (if appropriate under the evidence, of illness or intoxication or provocation not sufficient to reduce the degree or class of the crime), of the presumptions concerning, or possible uncertainties attaching to, life imprisonment, or of the irrevocableness of an executed sentence of death, or an apprehension that explanatory facts may exist which have not been brought to light, or any other consideration whatever which in the light of the evidence, the duty they owe to the accused and to the state, and the law as explained to them by the judge, appears to them to be important."

Although the trial judge gave lip service to the rule that "the penalty is entirely up to you [the jury]," and "anything I say is not binding on you," his comments as a whole, even if they were an accurate review of such of the evidence as he commented upon, would constitute a partisan plea for the more extreme penalty. The judge not only indicated in a general way his view that the penalty should be death; he went on to particularize his reasons for his view. He made it clear that in his opinion defendant showed no remorse ("I seemed to feel as I heard it that Mr. Friend was concerned mostly about his own plight and not what he had done") and that defendant had not fully disclosed details of the crime known to him ("He was the only one . . . that could give you the full details, if he saw fit so to do, but he said he didn't remember much about the rape, didn't remember much about this or about that"). Furthermore, in giving his reasons, the trial judge did not merely comment on the evidence; he misstated evidence unfavorably to defendant. The judge said, "You saw the defendant on the witness stand on two different occasions when he wouldn't answer the questions on cross-examination. . . . When certain questions were asked him why he didn't want to answer them. When I ordered him to answer them he said, 'I don't remember,' or 'I don't know.' Those were questions relative to the rape and relative to the molesting of the minor children several years

later and the rape on the elderly woman on which he was on probation at the time he was picked up for this offense.''

The two questions which defendant did not answer directly, and which the judge directed him to answer, had nothing to do with rape or molestation of children. One of the incidents which resulted in the judge's directing defendant to answer on cross-examination was as follows:

''Q. Did you have a couple of suitcases there [at defendant's brother's house when defendant called the newspaper reporter] ?  A. Yes.

''Q. Where were they in the house ?  A. I can't say where. That makes no difference. They were in the house.

''THE COURT: Answer the question.

''A. Well, I don't recall now just exactly where they were in the house.''

The second incident which resulted in the judge's directing defendant to answer on cross-examination was as follows:

''Q. Did you go down to the La Jolla Park [on the night defendant killed Miss Muir] ?  A. I think at this time, I think the story has been told so dog-gonned many times I am getting tired of repeating the thing.

''THE COURT: Mr. Friend, you will answer the questions. You have given your story on direct and you will give it on cross.  Now you answer the questions.

''BY MR. LOW: Q. Did you go down to the La Jolla Park ? A. I think I did.''

Manifestly these two incidents did not involve matters as serious as those indicated in the trial judge's comments; they did not concern defendant's offenses of rape and molestation of minor children.  The judge's statement that defendant refused to answer questions about those important and damaging matters was seriously prejudicial to defendant.

On the prior appeal in this case (*People* v. *Friend* (1957), *supra,* 47 Cal.2d 749) we took cognizance of the sole and absolute discretion of the jury in the selection between the two alternative but equally prescribed punishments, and for the guidance and assistance of trial judges specifically pointed out that (p. 766 of 47 Cal.2d) '' [13] Quite naturally jurors, in the conscientious discharge of their duty, are eager, as were those in this case, to have all the guidance the law can give them.  This poses a delicate task for the trial judge but his duty is clear.  He must, of course, inform the jurors that they have no concern with punishment unless, under the instructions applicable to the trial of the issue of guilty or not guilty,

they shall have found that beyond all reasonable doubt the defendant is guilty of murder of the first degree as charged.[2] When and if they so find, the duty of selecting the penalty devolves upon them, and on them alone, and they should be instructed as to the absolute nature of their power in the exercise of that function.

"From the discussion of the subject hereinabove and in *People* v. *Green* (1956), [*supra,* 47 Cal.2d] 209, 217-221, 229-232, it appears that there need be no error in counsel's advancing arguments as to which penalty will better serve the objectives of punishment, or in contending that the effect of certain evidence is 'mitigating' or 'aggravating,' as may affect their selection of the punishment to be imposed, *provided that the jurors in every case are clearly and adequately instructed as to the full scope of their function.* They should be told (in accord with the law as reviewed in *People* v. *Green* (1956), *supra,* and herein) that beyond prescribing the two alternative penalties the law itself provides no standard for their guidance in the selection of the punishment; that the law provides equally the two penalties of death or life imprisonment, but that neither penalty attaches automatically or at all until the jury unanimously agree upon their choice of punishment and designate it in their verdict; that the choice as between the two penalties is in every case committed to their absolute discretion." (Italics added.)

Section 190 of the Penal Code "clearly and equally states two alternatives as punishment; it gives preference to neither." (*People* v. *Green* (1956), *supra,* 47 Cal.2d 209, 218 [7] ; *People* v. *Friend* (1957), *supra,* 47 Cal.2d 749, 751 [5a] ; *People* v. *Brust* (1957), 47 Cal.2d 776, 787 [9] [306 P.2d 480].) Since the law itself suggests no preference for penalty or basis for making the selection, neither should the trial judge, by comment to the jury, suggest preference for either penalty or emphasize factors which would tend to influence the jury toward either penalty. Selection of penalty, as we have repeatedly emphasized, is exclusively and absolutely the province of the jury. Presumptively, a suggestion that the death penalty should not be imposed would not be prejudicial to the defendant, but certainly any suggestion that it should be imposed would be inherently prejudicial.

As to comment on the evidence relating to the issue of guilt

---

[2]Since the 1957 enactment of section 190.1 of the Penal Code, the issue of punishment is separately tried if a person is found guilty of an offense punishable by life imprisonment or death.

or innocence it is aptly said in *People* v. *Robinson* (1946), 73 Cal.App.2d 233, 237 [166 P.2d 17], that "The right thus conferred to comment on the evidence is a most potent one. Trial judges are not required to comment, but, if they do so, they should be extremely careful to exercise the power with wisdom and restraint. The point need not be labored that the members of the jury are apt to give great weight to any hint from the judge as to his opinion on the weight of the evidence or the credibility of the witnesses, and, for that reason, care should be taken not to affect unfairly the rights of the defendant." And comment on the evidence relating to the selection of penalty is, as hereinabove indicated, a far more delicate matter than comment on the facts bearing on the issue of guilt or innocence. On the issue of penalty, where so many factors, *including extrajudicial factors,* may properly influence—indeed, alone control—the jury's verdict, comment should be strictly restrained to the scope, nature, and substance we so carefully enunciated in the Green, Brust, and earlier Friend decisions; it should never extend to or encompass any indication by the judge that in his opinion the death penalty should be selected. Such an indication is inherently an invasion of the field which by law is committed exclusively and absolutely to the jury, and is clearly prejudicial to the defendant. Comment which passes the limit of fairness and amounts to advocacy of the more severe penalty is indisputably in contravention of our studied holdings in the Green, Brust, and previous Friend cases as well as of the long established rulings of this court in such cases as *People* v. *Leary* (1895), *supra,* 105 Cal. 486, 493, and *People* v. *Bollinger* (1925), *supra,* 196 Cal. 191, 207. If we are so soon to depart from such certainty and clarity as the Green, Brust, and Friend holdings provided and are to again indulge at least in part the inconsistencies which had plagued us for so many years (from 1874 to 1956; see *People* v. *Green* (1956), *supra,* 47 Cal.2d 209, 218-232) we owe it to the bench and bar to specify those holdings which today are intended to be overruled.

Simple intellectual integrity requires us to recall now the miserable mass and mess of irreconcilable inconsistencies which had been growing from (on the one side) the gross errors of *People* v. *Welch* (1874), 49 Cal. 174, clear down through *Kolez* (1944), 23 Cal.2d 670 [145 P.2d 580], *Williams* (1948), 32 Cal.2d 78 [195 P.2d 393], and *Byrd* (1954), 42 Cal.2d 200 [266 P.2d 505], and (on the other side) the never *heretofore*

disputed correctness of the "It is clear beyond question" holdings of *Leary* (1895), 105 Cal. 486, 496 [39 P. 24], *Bollinger* (1925), 196 Cal. 191, 207 [237 P. 25], and *Hall* (1926), 199 Cal. 451, 456-458 [249 P. 859], and many other cases down to Green wherein (at p. 226 of 47 Cal.2d) we accepted the law which for so many years had been "clear beyond question" and declared that "the decision we make today at last requires compliance with that law." But this is another "today," some two years later than Green. And on this "today" the majority implicitly and essentially recant the brave declaration of two years ago. As of today the law that from 1895 to 1956 was "clear beyond question" is either no longer the law or it is no longer clear. Furthermore, the decision today tells the bench and the bar that we no longer require "compliance with that law"; no longer is the discretion of the jury in the selection of penalty absolute or unfettered; no longer is the selection of penalty exclusively the province of the jury. Rather, the majority today hold, even though the selection of penalty (as between the two equally prescribed), unlike the issue of guilt, is not a matter which must be resolved on or controlled by the evidence, that nevertheless the judge may not only comment on the evidence but may intimate that it does not warrant selection of life imprisonment in preference to death; and even though it is (or was) altogether clear that the jury alone has the function of selecting the penalty, the judge may tell them that in his opinion they should fix the penalty at death.

The above indicated changes in the law which are express or implicit in today's majority decision impel me to reiterate some of the principles which, although apparently no longer the law, are, I think, deserving of respect.

A jury of laymen confronted with the difficult task of selecting between the penalty of death and that of life imprisonment will, it may be assumed, look to the trial judge for such guidance as he may give them, and will be likely to take their cue from any intimation of the trial judge as to what verdict he believes they should return. Instead of attempting to influence the jurors to accept his view the trial judge should inform them in accord with the law stated in *People v. Friend* (1957), *supra,* 47 Cal.2d 749, 767, "that beyond prescribing the two alternative penalties the law itself provides no standard for their guidance in the selection of the punishment; that the law provides equally the two penalties of death or life imprisonment, but that neither penalty attaches

automatically or at all until the jury unanimously agree upon their choice of punishment and designate it in their verdict; that the choice as between the two penalties is in every case committed to their absolute discretion," etc. It would be a rare case, if any, in which it would be proper for a trial judge to make any other comment on the law or the facts pertaining to the selection of penalty than comment of the scope and substance of that set forth in the Friend case, *supra,* pages 766-768 of 47 Cal.2d, and quoted in large part *ante,* pages 509, 513.

It is improper for the trial judge to throw the weight of his office behind a selection which is for the jury alone. "It is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling." (*Starr* v. *United States* (1894), 153 U.S. 614, 626 [14 S.Ct. 919, 38 L.Ed. 841], quoted in *Bollenbach* v. *United States* (1946), 326 U.S. 607, 612 [66 S.Ct. 402, 90 L.Ed. 350], and in *Sanguinetti* v. *Moore Dry Dock Co.* (1951), 36 Cal.2d 812, 819 [228 P.2d 557].) In the Sanguinetti case, an action for damages under the Jones Act, plaintiff's counsel in the presence of the jury asked leave to amend the complaint to increase the amount of damages prayed for from $50,000 to $75.000. The trial court, outside the presence of the jury, granted the motion and denied defendant's motion for mistrial on the ground of misconduct of plaintiff's counsel in presenting the motion in the jury's presence. The court instructed the jury that "The damages must be reasonable and cannot be in excess of the amount alleged in the complaint, namely $75 000." We held (p. 819 [3] of 36 Cal.2d) that ". . . any practice which would include the making of a motion, in the presence of the jury, after production of evidence, to increase the amount of damages asked, and which would bring to the knowledge of the jury the fact that the court after hearing plaintiff's evidence permitted the complaint to be amended by increasing the prayer for damages, should be unhesitantly condemned and stricken down," for (p. 819 [4] of 36 Cal.2d) "It is, of course, elementary that the amount of damages is ordinarily a question of fact to be determined by the jury."

It is true that the Sanguinetti case was by a bare majority of this court but I do not understand that the declared principles of law, as such. were seriously disputed. It was, rather, application of those principles to the facts of the case on which we divided. In the specific criminal case now before

us, it seems to me that the court's influencing the jury *as to selection of penalty*, a matter committed to the sole and absolute discretion of the jury, much more than its influencing the jury in any civil case as to amount of damages, should be unhesitantly condemned and stricken down.

Also analogous are the following statements in *Dorsey* v. *Barba* (1953), 38 Cal.2d 350 [240 P.2d 604], which holds that the trial court does not have the power to increase an inadequate award of unliquidated damages without plaintiffs' consent: (p. 356 [8] of 38 Cal.2d) "An essential element [of the constitutionally guaranteed right to trial by jury] . . . is that issues of fact shall be decided by a jury, and the assessment of damages is ordinarily a question of fact. The jury as a fact-finding body occupies so firm and important a place in our system of jurisprudence that any interference with its function in this respect must be examined with the utmost care"; (p. 358 [10] of 38 Cal.2d) "it is not the mere form of a jury trial to which one is entitled under the Constitution, but the fundamental right to have a jury determination of fact." Likewise it is not the mere form of a jury selection of penalty to which a defendant is entitled under the Penal Code, but the fundamental right to have the selection made by the jury uninfluenced by the trial court.

It seems particularly incongruous, in my sense of relative values, that this court should reach the result of the majority in this case when so recently the court in considering a claim for damages in a civil case held that there must be a new trial because a jury *may* have been "misled [by statements of the trial judge] as to the proper manner of determining liability." In *Butigan* v. *Yellow Cab Co.* (1958), 49 Cal.2d 652, 660 [320 P.2d 500], this court (even though the Vehicle Code expressly recognizes unavoidable accident as a defense in the circumstances there defined, and even though the instruction had been recognized as proper for many years) held that through the giving of the instruction on unavoidable accident the jurors "may get the impression that unavoidability is an issue to be decided and that, if proved, it constitutes a separate ground of nonliability of the defendant. Thus they may be misled as to the proper manner of determining liability . . ." How much more likely it is that the jury in this penalty-selection case were misled by the inaccurate, unwarranted, and inherently damaging statements of the trial judge.

The fact that the defendant in the instant case is a miserable, friendless creature, guilty of horrible crimes, does not make

him, in what I view as the proper concept of our function, any less deserving of a fair trial than was the plaintiff in *Butigan* v. *Yellow Cab Co., supra.*

The cases last cited and summarized apply to situations other than the one now before us the familiar concept that the trial judge should not improperly interfere in matters which are for the exclusive determination of the jury. The Green (1956), *supra,* 47 Cal.2d 209, and earlier Friend (January 25, 1957), *supra,* 47 Cal.2d 749, cases specifically apply that concept to the problem of selection of penalty. Since the latter decisions (and since the return, on June 19, 1957, of the improperly influenced verdict now under consideration), the rules there announced have received implicit legislative approval by an enactment which went into effect on September 11, 1957, and which amended section 190 of the Penal Code and adopted section 190.1 of that code so as to provide for a separate trial on the issue of punishment in the case of a person charged with an offense for which the penalty is in the alternative death or life imprisonment.

Section 190.1 provides in part that "Evidence may be presented at the further proceedings on the issue of penalty, of the circumstances surrounding the crime, of the defendant's background and history, and of any facts in aggravation or mitigation of the penalty." Thus the section clearly accepts our suggestion in the earlier Friend opinion (p. 763 of 47 Cal.2d, footnote 7) that "The character and scope of evidence pertinent to punishment which should be received in a case wherein the jury is required to fix the penalty, is a subject which could well receive legislative attention."

Section 190.1 further provides in material part that "In any case in which defendant has been found guilty by a jury, and the same or another jury, trying the issue of penalty, is unable to reach a unanimous verdict on the issue of penalty, the court shall dismiss the jury and either impose the punishment for life in lieu of ordering a new trial on the issue of penalty, or order a new jury impaneled to try the issue of penalty . . ." The wording of this new section certainly does not purport to authorize the trial judge to "order a new jury impaneled to try the issue of penalty" *and to instruct them that in his opinion they should fix the penalty at death.* It does authorize the trial judge to "either impose the punishment for life . . . or order a new jury impaneled to try the issue of penalty."

There is not the slightest indication in the new section that the Legislature intended to alter the rules spelled out by this court in *People* v. *Green* (1956), *supra*, 47 Cal.2d 209, and *People* v. *Friend* (1957), *supra*, 47 Cal.2d 749. The section does not empower the judge to instruct the jury in any way whatsoever not consonant with those rules. Rather, by dealing with the matters there determined in a manner consistent with those determinations it in effect recognizes and approves our holdings. Today the majority not only refuse to recognize and apply those holdings; they further refuse to accept the legislative recognition of such holdings.

For the reasons above stated I would reverse the judgment and the order denying a new trial.

McComb, J., concurred.

CARTER, J.—I dissent.

I am in full accord with the views expressed by Mr. Justice Schauer in his dissenting opinion in this case. The quoted statements of the trial judge to the jury were obviously intended to and did influence the jury in the rendition of its verdict. The unmistakable effect of these statements was to deny defendant the free, untrammeled and unbiased determination of the jury as to punishment to which defendant was entitled under the law of this state. As forcibly pointed out in said dissenting opinion, the majority of this court has reversed judgments based upon jury verdicts in civil cases where the alleged error was infinitesimal compared to that shown by the record in this case. This is particularly true where the alleged error consisted of comments or statements of the trial judge which may have affected the determination reached by the jury.

In *Sanguinetti* v. *Moore Dry Dock Co.*, 36 Cal.2d 812 [228 P.2d 557], I could see no error, much less prejudicial misconduct, on the part of either the trial judge or counsel for plaintiff which in any manner influenced the verdict in that case (see my dissent, p. 823 et seq.), but a majority of this court nevertheless reversed a judgment for plaintiff which was obviously supported by substantial evidence because plaintiff's counsel, in the presence of the jury, moved to amend the prayer of plaintiff's complaint by increasing the demand for damages from $50,000 to $75,000. The court did not rule on this motion in the presence of the jury, but later granted it and instructed the jury that it could not return a verdict in

excess of the sum of $75,000, the amount demanded in the complaint. The jury returned a verdict for $75,000 and a majority of this court reversed a judgment entered thereon on the sole ground that the foregoing occurrences constituted prejudicial error. I did not agree with that holding. Here, however, the prejudicial misconduct of the trial judge is so glaring that its adverse effect upon the jury cannot be denied.

To my mind it is exceedingly unfortunate when a judgment in a criminal case is upheld in the face of obvious and glaring prejudicial misconduct on the part of a trial judge, or prosecuting attorney with the judge's approval, as such a situation casts grave doubt upon the fairness of the trial and may amount to a violation of the due process clauses of both the state and federal Constitutions. Such was the situation in the recent case of *People* v. *Osslo, ante,* p. 75 [323 P.2d 397] (see dissenting opinion, *ante,* p. 106), where the same trial judge presided as in the case at bar.

It is my considered opinion that the administration of justive is defeated in many cases where a trial judge throws the weight of his position against a litigant by conduct or statements designed to influence the jury against such litigant. While jurors do not always respond to such conduct, there is a tendency for them to do so, which has the effect of depriving the litigant of his right to a fair trial before a jury. Unless this court assumes the burden of correcting situations of this character when called to its attention, we might just as well abolish our jury system.

I would reverse the judgment imposing the death penalty and grant defendant a new trial on the issue of punishment.

Appellant's petition for a rehearing was denied July 30, 1958. Carter, J., Schauer, J., and McComb, J., were of the opinion that the petition should be granted.