[Civ. No. 28672. First Dist., Div. Two. Dec. 28, 1971.]

DENNIS JAY SCHNEAR, Plaintiff and Appellant, v.
EDWIN B. BOLDREY, Defendant and Respondent.

480

---

COUNSEL

Werchick & Werchick and Jack Werchick for Plaintiff and Appellant.

Hassard, Bonnington, Rogers & Huber, Robert D. Huber and Richard G. Logan, for Defendant and Respondent.

---

**OPINION**

**KANE, J.**—In this medical malpractice case plaintiff, Dennis Jay Schnear, appeals from a judgment entered upon a unanimous jury verdict in favor of respondent Edwin B. Boldrey.

In November 1963 appellant (then 18 years old) noticed that he could not hold a pencil or pen in his right hand. Medical tests at that time were inconclusive. In early 1964 he entered the United States Navy, but was medically discharged in July 1964 following an examination at a naval neurological clinic which revealed a weakness and paralysis of his right wrist and hand, atrophy of his upper right arm and a tumor on his neck.

In August 1964 appellant came under the care of Dr. Donald Macrae, a neurologist at the University of California Medical School, who confirmed the neurological findings discovered by the naval doctors. Dr. Macrae concluded that appellant had a problem in the spinal cord and neck, and suggested that appellant be hospitalized at the University of California Hospital for diagnostic studies. The results of these tests, while informative, were not sufficiently definitive as to be diagnostic.

Dr. Macrae re-examined appellant in September and October 1964, at which time some minor improvement was noted. In January 1965, however, examination disclosed deterioration; accordingly, Dr. Macrae referred appellant to respondent, a Professor of Neurosurgery at University of California Medical Center.

Appellant was examined by respondent in February and again in December 1965. Between the two examinations by respondent, appellant returned to Dr. Macrae in July 1965. Upon that examination, Dr. Macrae observed a progression of the condition affecting appellant's right upper extremity and was of the opinion that appellant had a lesion in the cervical cord, probably syringomyelia, which is a collection of fluid in the spinal cord, or a tumor.

On January 11, 1966, upon respondent's recommendation, further diagnostic tests were performed. The myelogram taken this time showed an increase in the cord widening since August 1964, and affirmed the probable diagnosis of syringomyelia.

On January 24, 1966, appellant was readmitted to the hospital for exploratory surgery in an attempt to verify and correct the suspected syringomyelia. The operation, performed by respondent on January 25, 1966, required appellant to be placed on the operating table in a prone position, with his head extending over the edge of the operating table and bent forward. Appellant was in this position for approximately four hours.

During the operation, respondent removed the lamina of the spine in the cervical area and found a bed of intertwining blood vessels. These vessels were inside the bony canal of the spine but outside the dura, which is

the covering of the spinal cord. Because he felt that any attempt to dissect these vessels would endanger the life of the patient, respondent terminated the procedure.

Later in the day following the surgery, the pupil of appellant's left eye was noted to be larger than the right and his left eyelid drooped as a result of swelling. On January 26, 1966, the first postoperative day, swelling was noted around the left eye, and appellant complained that he could not open his left eyelid. On January 28, 1966, it was discovered that appellant was blind in his left eye. Dr. Hoyt, an ophthalmologist, examined appellant and found that the central retinal artery to the left eye was occluded.

### I. *The trial court did not abuse its discretion in continuing the trial.*

Appellant contends that the trial court committed prejudicial error in continuing the trial from December 11, 1968, to January 3, 1969. This contention is without merit.

The record reveals that the continuance was ordered by reason of illness of several jurors. At the time of granting the adjournment, 13 trial days had been consumed, 13 witnesses (including 11 medical doctors) had already testified, and the Christmas-New Year holiday period was imminent. In these circumstances, the interest as well as the efficient administration of justice justified, if not compelled, the continuance.

It is well established that where a juror or a material witness becomes ill during the trial, the court has discretion to continue the same, instead of discharging the jury and declaring a mistrial (88 C.J.S., Trial § 45, p. 115). Equally well settled is the rule that the trial court's decision as to granting a continuance will not be reversed on appeal except upon a clear showing of an abuse of discretion (*People* ex rel. *Dept. Pub. Wks.* v. *Busick* (1968) 259 Cal.App.2d 744 [66 Cal.Rptr. 532]). In the instant case no such abuse has been shown and we find none.

### II. *The trial court's comments on the evidence were proper.*

During the examination of appellant's expert witness, Dr. Merchant, when the probable causes of appellant's blindness were being discussed, the trial judge made the following remark: "There is no evidence in the case up to this point that—except highly inferentially that the eye injury was caused by direct pressure."

Appellant contends that the above comment by the trial court was improper and prejudicial. It was neither improper nor prejudicial.

Pursuant to article VI, section 10, of the California Constitution, the court may make such comment on the evidence as in its opinion is necessary for the proper determination of the cause. ■ The cases interpreting the above provision point out that the trial judge is not confined to a colorless recital of the evidence but may analyze the testimony and even express his views with respect to the credibility of witnesses (*People* v. *De Moss* (1935) 4 Cal.2d 469 [50 P.2d 1031]). ■ It is equally well established that the judge may restrict his comments to portions of the evidence or to the credibility of a single witness and need not sum up all the testimony (*People* v. *Gosden* (1936) 6 Cal.2d 14, 27-28 [56 P.2d 211]). ■ The only limitations upon the judge's power to comment on the evidence are that he may not withdraw evidence from the jury's consideration or distort the testimony; and he must inform the jurors that they are the exclusive judges of all questions of fact and of the credibility of the witnesses (*People* v. *Friend* (1958) 50 Cal.2d 570, 577-578 [327 P.2d 97]).

■ The record here discloses that the judge fully complied with these requirements.

Dr. Merchant testified prior to the judge's remark that the outside pressure to the soft tissue of the eye was *the most probable cause* of appellant's blindness, thereby leaving a number of other probable causes open. The judge's comment that the evidence up to that point was inferential was therefore patently correct and totally lacking any distortion. In addition, the record as a whole abundantly demonstrates that Dr. Merchant was given ample opportunity to state his opinion as to the cause of appellant's blindness and this was made clear to the jury.

Finally, the judge several times admonished and reminded the jurors of their role as the exclusive judges of the facts of the case and the credibility of the witnesses.

Under these circumstances we cannot say that the comment of the trial judge was improper much less that it was prejudicial.

### III. *The trial court did not commit error in regard to Dr. Hanberry's testimony.*

Appellant next asserts that the trial court committed prejudicial error in allowing respondent's expert witness, Dr. Hanberry, to speculate as to the possible causes of appellant's blindness, contending that Dr. Han-

berry's opinion testimony did not have factual support in the evidence. We disagree.

The record indicates that while Dr. Hanberry occasionally used such words as "conjecture," "possibility," and "theoretical," the context and totality of his testimony clearly show that he was testifying as to medical probabilities, giving what in the light of medical science appeared to be the most probable explanation of the event (*Santa* v. *Industrial Acc. Commission* (1917) 175 Cal. 235, 236-237 [165 P. 689]). ▮ As has been pointed out before, every medical opinion, of necessity, must be in a sense speculative; but this does not destroy the probative value of such opinion (*Foremost Dairies* v. *Industrial Acc. Com.* (1965) 237 Cal.App.2d 560, 572 [47 Cal.Rptr. 173]). In essence, appellant's objection here goes to the weight, rather than the admissibility of the evidence; and the trial court's ruling was, therefore, eminently correct.

## IV. *Res ipsa loquitur.*

The record discloses that the trial court gave conditional res ipsa loquitur instructions to the jury as follows:

"In this case it is your duty to determine first whether the injury for which plaintiff seeks to recover damages was proximately caused by the operation performed by the defendant, and again it applies to both. If you find that such operation was not a proximate cause of any injury to plaintiff then you will find against the plaintiff and in favor of the defendants.

"On the other hand, if you find that plaintiff's injury was proximately caused by such operation then you are further instructed as follows:

"You must decide the following questions concerning the injury involved in this case, is it the kind of injury which ordinarily does not occur in the absence of negligence? In other words, is it more probable than not that the injury resulted from negligence? Whether it is more probable than that [*sic*] that the injury resulted from negligence is to be determined from the evidence presented in this trial by physicians and surgeons called as expert witnesses.

"*The mere fact that a particular injury does not ordinarly result from a surgical procedure does not in and of itself prove that it was caused by negligence.*

"If, and only if, you find that it is more probable than not that the plaintiff's injury resulted from the negligence of a defendant was caused

while the plaintiff was under the care or control of the defendant and was not due to any voluntary action or contribution by plaintiff you are instructed as follows:

"From the happening of the accident involved in this case an inference may be drawn that a proximate cause of the occurrence was some negligent [*sic*] on the part of the defendant. If you draw such an inference of defendant's negligence then unless there is contrary evidence sufficient to meet or balance it you will find in accordance with the inference.

"In order to meet or balance such an inference of negligence the evidence must show either one, a definite cause for the accident not attributable to any negligence of defendant or, two, such care by defendant that leads you to conclude that the accident did not happen because of defendant's lack of care, but was due to some other cause, although the exact cause may be unknown.

"If there is such sufficient contrary evidence you shall not find merely from the happening of the accident that a proximate cause of the occurrence was some negligent conduct on the part of the defendant." (Italics added.)

■ Appellant argues that the inclusion of the emphasized language was misleading to such an extent that it constitutes reversible error.

This contention cannot be sustained for several reasons.

First of all, the "mere fact" proposition and conditional res ipsa loquitur principles are not conflicting in medical malpractice cases where, as here, the jury is required to rely upon expert testimony in determining whether a probability of negligence appears from the happening of the injury (*Tomei* v. *Henning* (1967) 67 Cal.2d 319 [62 Cal.Rptr. 9, 431 P.2d 633]; see also Use Note to Instruction No. 6.35, BAJI (5th ed.)).

■ It is a well established principle that the fact that a particular injury stemming from a surgical operation or procedure rarely occurs does not of itself prove that the injury was probably caused by negligence (*Siverson* v. *Weber* (1962) 57 Cal.2d 834, 839 [22 Cal.Rptr. 337, 372 P.2d 97]; *Clemens* v. *Regents of University of California* (1970) 8 Cal.App.3d 1 [87 Cal.Rptr. 108]). It follows that the "mere fact" portion of the instruction is a correct statement of the law. ■ It is axiomatic that the jury is entitled to be, and should be, instructed on all pertinent issues of the law.

Thus, in the context of the entire instruction the jury was simply told that the isolated fact that a particular consequence does not usually result from a surgical procedure does not per se prove negligence as a cause.

■ The jury was then told, however, that if they found from expert testimony that the probabilities in the instant case pointed to negligence as a cause, they could then infer negligence on respondent's part and *find* liability unless that inference was met or balanced.

It is true that some cases have considered such an instruction to be misleading. Certainly, where res ipsa applies as a matter of law, a "mere fact" instruction would not only be confusing but flatly contradictory (*Alarid* v. *Vanier* (1958) 50 Cal.2d 617 [327 P.2d 897]).

Likewise, in cases where the claimed negligence is within the knowledge or understanding of the jury, the "mere fact" instruction can be misleading. However, no case has been called to our attention, and we have found none, holding such error to be prejudicial. *Klinger* v. *Henderson* (1969) 276 Cal. App.2d 774 [81 Cal.Rptr. 305], relied upon by appellant, is distinguishable. In that case the Court of Appeal simply affirmed the trial court's determination that the instruction was misleading in the circumstances of that case.

Secondly, our independent review of the expert testimony in this case discloses a total absence of any evidence that the injury to appellant was one "which ordinarily does not occur in the absence of negligence." Although appellant's expert, Dr. Merchant, suggested that the blindness was caused by pressure on the eye and its surrounding tissues by the face rest, there is no evidence that such position of the patient was improper or that it could or should have been avoided or prevented by respondent.

Thus, had the jury found against respondent, it could have reached such a conclusion only by speculating that the "unfortunate result" was caused by negligence on respondent's part. We conclude, therefore, that appellant was not entitled to an instruction on res ipsa loquitur at all (*Siverson* v. *Weber, supra,* 57 Cal.2d 834). Accordingly, appellant is in no position to complain of the giving of an instruction which could only be beneficial to his cause.

Finally, assuming arguendo that appellant would have been entitled to res ipsa instructions and assuming further the instructions given to be erroneous, it is apparent from the record that even without such alleged error, it is improbable that a different result would have occurred (Cal. Const., art. VI, § 13; *Shuey* v. *Asbury* (1936) 5 Cal.2d 712, 713 [55 P.2d 1160]).

Upon a review of the entire record, it was the unanimous opinion of the expert witnesses who were questioned on the subject that appellant's operation was well indicated and justified. Additionally, the overwhelming weight of expert testimony supports the conclusions that (1) respondent exercised the requisite standard of care in carrying out the surgery; and (2) that the

resulting blindness and paralysis were not due to any malpractice, but rather resulted from vascular disturbances or insults occasioned by vascular malformations or anomalies of appellant.

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 23, 1972. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.