[Crim. No. 22558. Feb. 10, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY RAY COOK, Defendant and Appellant.

**COUNSEL**

Ilan Funke-Bilu, under appointment by the Supreme Court, for Defendant and Appellant.

Quin Denvir, State Public Defender, and Ralph H. Goldsen, Deputy State Public Defender, as Amici Curiae on behalf of Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, W. Eric Collins and Frances Marie Dogan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BIRD, C. J.**—After a jury has deliberated and failed to agree upon a verdict, may the trial court comment on the evidence and express its opinion regarding the guilt or innocence of the accused?

I.

Appellant was convicted by a jury of preventing or dissuading a witness from attending a trial by means of force or threats of unlawful injury. (Former Pen. Code, § 136, subd. (b).)[1]

The prosecution's case against appellant consisted primarily of the testimony of Clemie McManus and her 10-year-old daughter, Jaine. McManus had known appellant, his brother Randy, and other members of the Cook family for more than a year. Randy was a defendant in a pending capital murder case.

---

[1]The Legislature repealed Penal Code section 136 by Statutes 1980, chapter 686, section 1, page 2076. See now Penal Code section 136.1.

In November of 1979, the prosecution subpoenaed McManus to be a witness at Randy's preliminary hearing. She testified at the hearing that after the alleged murder, Randy and his accomplices hid from the police at McManus' home, holding her and her children hostage. McManus expected to again testify for the state at Randy's upcoming trial.

During the afternoon of March 26, 1980, appellant unexpectedly came to McManus' apartment and spoke with her outside the front door. According to McManus, appellant asked why she was testifying against Randy. She explained that the prosecution had subpoenaed her to be a witness at the preliminary examination. Appellant assertedly responded that he had heard a different story and warned McManus that "if [McManus] testified against his brother . . . [she] wouldn't walk off the stand alive." Appellant further stated that "if [McManus] should go to the police department after he left, . . . he'd see that the situation was taken care of."

McManus testified that appellant's voice was "stern and serious." She was "scared to death" by his threats. After appellant left the apartment, McManus and her daughter, Jaine, went to the police station to report the incident.

McManus' testimony concerning appellant's conduct was consistent with the story told by her daughter. Jaine testified that she answered the front door when appellant knocked and then summoned her mother. From behind the half-open door, she could hear appellant talking to her mother in a loud voice. She allegedly heard appellant say that he would be in the courtroom and that if her mother testified, he "wouldn't let her come off the stand alive." Jaine also claimed she heard appellant threaten "to take care of" McManus if the police were contacted.

Through cross-examination, appellant sought to attack the credibility of McManus and her daughter. One theory appellant presented was that the witnesses were too frightened to accurately recall the statements made by him during the conversation. Appellant also contended that the witnesses had fabricated their testimony in retaliation for prior incidents of harassment from other members of the Cook family.[2]

The jury began deliberating appellant's guilt or innocence in the early afternoon of July 1, 1980. At 11 a.m. the next morning, the jurors requested that the

---

[2]The only other prosecution witness was Kenneth Hayse, a polygrapher employed by the California Department of Justice. Hayse testified that pursuant to the stipulation of the parties, he had performed a polygraph examination on appellant. Hayse stated that appellant's answers denying that he had threatened McManus in his conversation with her were "deceptive."

Appellant did not testify at his trial. The only witness called by the defense was John Hampton, a polygrapher, who questioned the validity of the examination results reached by Hayse.

complete testimony of McManus and her daughter be read back to them. After this was done, deliberations continued from 2:37 p.m. until 4:08 p.m. The trial court then received a note from the jurors indicating their inability to reach a verdict. The court recalled the jurors and asked whether it could provide any assistance to them. The court explained that the state Constitution authorized it to comment on the evidence presented at the trial.

Initially, the jury forewoman asked for an explanation of the difference between a misdemeanor and a felony.[3] After receiving an answer from the bench, the forewoman stated that "otherwise it is not a matter of law. . . . It is the matter of the believability of a witness." When the trial court inquired whether the jury would be able to arrive at a verdict if deliberations were continued, the forewoman stated that she did not think so. Nevertheless, the trial court instructed the jury to resume its deliberations.

At 4:30 p.m., the jury returned to the courtroom. The forewoman reported that the jury was still deadlocked and delivered a note to the court. The note indicated that the jury could resolve its differences if it could have "an opinion or judgment [by the trial court] on the credibility of both Clemie and Jaine McManus as witnesses." Over the objection of appellant's counsel, the trial court assented to the jury's request. It prefaced its comments by instructing the jury pursuant to CALJIC No. 17.32 that its statements were "intended to be advisory only" and that the jurors remained "the exclusive judges of the questions of fact."[4]

Thereupon, the court reviewed the instruction defining the elements of the charged offense and expressed its opinion concerning the ultimate issue of fact. "After I look at that instruction and apply it to my recollection of the evidence taken in this case, I am of the opinion that those ingredients have in fact been established beyond a reasonable doubt . . . ."

---

[3]The jury had been instructed that a lesser included offense of former Penal Code section 136, subdivision (b) was subdivision (a) of that section. Under subdivision (a), a person who willfully prevented or dissuaded a witness from attending a judicial proceeding was guilty of a misdemeanor offense. Subdivision (b), a felony, added the requirement that the witness be prevented or dissuaded from attending the proceeding by use of force or threat of injury.

[4]CALJIC No. 17.32 (4th ed. 1970) states in full: "I have not intended by anything I have said or done, or by any questions that I may have asked, to intimate or suggest how you should decide any questions of fact submitted to you.

"If anything I have done or said has seemed to so indicate, you will disregard it and form your own opinion.

"At this time, however, and for the purpose of assisting you in deciding this case, I am permitted by the Constitution of California to comment on the evidence and the testimony and credibility of any witness.

"My comments are intended to be advisory only and are not binding on you as you are the exclusive judges of the questions of fact submitted to you and of the credibility of the witnesses.

"You should disregard any or all of the comments if they do not agree with your views of the evidence and the credibility of the witnesses."

The evidentiary basis for this conclusion was then explained to the jury. The trial court stated, "Now I have arrived at that [opinion] by doing the same thing that I have asked you to do and you have a right to do, and that is, to look at the believability and credibility of the witnesses, and if you will recall that instruction [CALJIC No. 2.20 (6th rev. ed. 1979)], we tell you to look at certain matters." These factors included, the court explained, "the character and quality of the testimony, the demeanor of the witness while testifying and the manner in which she testifies, the existence or nonexistence of a bias, interest or other motive, [and] statements previously made by that witness that are consistent with their [sic] in-court testimony." Applying these standards to the statements of McManus and her daughter, the court opined that "their testimony is in fact believable and . . . the evidence given by both of those witnesses is credible to the extent that it satisfies this Court beyond a reasonable doubt that they have established the elements necessary and therefore I would be willing to arrive at a verdict in this matter."

The court elaborated extensively regarding the credibility of McManus' testimony. "I think when you look at it, you really have to ask yourselves, well, what is the bias, motive or interest in this witness not to tell the truth. What is there in this situation that existed on March 26th of 1980 or before that time or since that time that would put this witness in a position where she had some bias, interest or motive to do anything but to tell the truth as she testified here under oath[?]

"I find there is none. It just doesn't make any sense to me as I analyze that woman, her testimony, and how she testified, that she had any bias, interest or motive to do anything but tell the truth.

"She can gain nothing by this action, as far as I have been able to discern from what has been said in the courtroom. I was convinced by her demeanor that she is just a plain, ordinary kind of witness that we see all the time, that she does not have any special training, skill or education that would put her in a position where we would not expect that she could answer those questions any more articulately than she did or without some of the inconsistencies that appeared in that testimony, because those, as I told you, is [sic] something we can expect in the normal course of events.

"I also came to the conclusion that I would believe her simply because she had had other occasions to tell the same story and although there might be technical inconsistencies, [5] that her stories have always been consistent, that

---

[5]The trial court was apparently referring to inconsistencies between McManus' testimony at trial, her testimony at the preliminary examination, and her written statement to the police on the date of the incident. At trial, McManus stated that appellant threatened "that the situation [would be] taken care of" if she reported him to the police. By contrast, she had testified at the

without an invitation on her part that this defendant, Mr. Cook, came to her establishment and in her presence said words which reasonably can be interpreted as a threat of force and violence upon her body or upon her person in order to dissuade her, and again, remember that only means to advise or to request or to ask her from [*sic*] testifying further in any proceedings against his brother."

Following this discussion, the trial court shifted its attention to appellant's motive in committing the charged offense. The court commented, "I think it is established beyond any doubt that his brother was in fact a defendant in a capital offense, a murder kidnapping, and that the victim of that case was a ten-year-old girl, and that the purpose and motive of that killing was to keep that girl from testifying at a trial and that matter did in fact involve this defendant's brother, and that if she had something that she perceived and could testify against regarding that underlying case, it might very well do damage to his brother and because of the fact that they are blood relatives, and the natural inclination is to protect ones [*sic*] family, that he would in fact have a motive to go to that establishment as soon as he was free to do so and tell her to knock it off and not do it again."

Finally, the court concluded its remarks on the evidence by reiterating its views concerning McManus' truthfulness and appellant's guilt. ". . . I am of the opinion, after evaluating the witnesses who testified in this case, that she is in fact a truthful witness. Well, then, I have to accept that those words of threat and use of force were actually uttered and therefore I would be of the opinion that he is in fact guilty of a violation of Section 136b of the Penal Code, a felony."

Before resuming their deliberations, the jurors were reminded that they had the "ultimate responsibility of determining the believability of the witnesses" and that the trial court's comments were not "binding." Fourteen minutes after returning to the jury room, the jury found appellant guilty of the charged offense.

Appellant now appeals from his conviction.

## II.

 The primary issue raised by this case is whether the trial court's comments to the deadlocked jury were proper. Appellant contends that the trial

---

preliminary examination that appellant "asked [her] not to go to the police department." She had not mentioned any threat made by appellant to dissuade her from informing the police about the incident. In her earlier written statement to the police, the witness had stated that she was told by appellant that if she contacted the police, she would be "taken care of."

court improperly influenced the jury to return a verdict of guilty and thereby exceeded the scope of its constitutional authority to comment on the evidence.[6]

■ Article VI, section 10 of the California Constitution provides in pertinent part that "[t]he court may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause."[7] The purpose of this provision is to allow the trial court to utilize its experience and training in analyzing evidence to assist the jury in reaching a just verdict. (*People* v. *Brock* (1967) 66 Cal.2d 645, 650 [58 Cal.Rptr. 321, 426 P.2d 889]; *People* v. *Friend* (1958) 50 Cal.2d 570, 576-577 [327 P.2d 97]; *People* v. *Ottey, supra,* 5 Cal.2d at pp. 723, 725-726; see also *Quercia* v. *United States* (1933) 289 U.S. 466, 469 [77 L.Ed.2d 1321, 1324-1325, 53 S.Ct. 698].)

To facilitate this objective, the Constitution empowers the trial court "to do more than merely summarize the evidence." (*People* v. *Friend, supra,* 50 Cal.2d at p. 576.) The court may critically evaluate the testimony, advising the jury as to the credibility of the witnesses and the weight or significance of the evidence. (*Id.,* at pp. 576-578.)

However, the trial court's power to comment on the evidence is not without strict limitations. (*People* v. *Brock, supra,* 66 Cal.2d at p. 650; *People* v. *Friend, supra,* 50 Cal.2d at p. 577; *People* v. *De Moss* (1935) 4 Cal.2d 469, 477 [50 P.2d 1031]; *People* v. *Huff* (1955) 134 Cal.App.2d 182, 187 [13 P. 168].) The danger of judicial comment is that the jury is likely to place too much reliance on the judge's opinion of how to resolve a factual issue. (*People* v. *Friend, supra,* 50 Cal.2d at p. 587 (dis. opn. of Schauer, J.); *People* v. *Robinson* (1946) 73 Cal.App.2d 233, 237 [166 P.2d 17].) As the Court of Appeal has noted, "[t]he right . . . to comment on the evidence is a most potent one. . . . The point need not be labored that the members of the jury are apt to give great weight to any hint from the judge as to his opinion on the weight of the evidence or the credibility of the witnesses . . . ." (*Robinson, supra,* at p. 237.)

---

[6]Appellant also contends that in considering his motion for a new trial, the trial court erroneously excluded from evidence an affidavit of a juror. Appellant sought to establish through this affidavit that the jury had improperly reached its verdict pursuant to an agreement to abide by the trial court's comments on the evidence. It is not necessary to address this issue since the decision concerning the trial judge's comments on the evidence renders it moot.

[7]This provision authorizing comment was added to the Constitution by an amendment adopted by the voters in the November 1934 election. (See former art. VI, § 19; *People* v. *Ottey* (1936) 5 Cal.2d 714, 722 [56 P.2d 193].) As part of the 1966 revision of the Constitution, the provision was transferred to its present location in section 10 of article VI. (*People* v. *Shannon* (1968) 260 Cal.App.2d 320, 325-330 [67 Cal.Rptr. 207].) Authority for judicial comment is also found in Penal Code sections 1093 and 1127.

The United States Supreme Court has commented similarly in *Bollenbach* v. *United States* (1946) 326 U.S. 607, 612 [90 L.Ed. 350, 354, 66 S.Ct. 402]. " 'The influence of the trial judge on the jury is necessarily and properly of great weight,'. . . and jurors are ever watchful of the words that fall from him. Particularly in a criminal trial, the judge's last word is apt to be the decisive word." (See also *Quercia* v. *United States, supra,* 289 U.S. at p. 470 [77 L.Ed. at p. 1325].)

For these reasons, a trial court that chooses to comment to the jury must be extremely careful to exercise its power "with wisdom and restraint and with a view to protecting the rights of the defendant." (*People* v. *Shannon, supra,* 260 Cal.App.2d at p. 331; see also *People* v. *Rincon-Pineda* (1975) 14 Cal.3d 864, 886 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845]; *People* v. *Friend, supra,* 50 Cal.2d at p. 587; *People* v. *De Moss, supra,* 4 Cal.2d at p. 77.) The court's comments must be scrupulously fair and may not invade the province of the jury as the exclusive trier of fact. (*People* v. *Friend, supra,* 50 Cal.2d at pp. 577-578.)

Prior cases have held that article VI, section 10 does not permit the trial judge to inaccurately state the testimony of witnesses nor withdraw material evidence from the jury's consideration. (*People* v. *Brock, supra,* 66 Cal.2d at p. 650; *People* v. *Friend, supra,* 50 Cal.2d at p. 577; *People* v. *Ottey, supra,* 5 Cal.2d at p. 724.) In addition, judicial comment should be temperate rather than argumentative and the trial court must avoid engaging in partisan advocacy. (*People* v. *De Moss, supra,* 4 Cal.2d at pp. 476-477; *People* v. *Talkington* (1935) 8 Cal.App.2d 75, 99 [47 P.2d 368].)

Most importantly, the constitutional provision allowing judicial comment does not authorize the judge to usurp the jury's exclusive function as the arbiter of questions of fact and the credibility of witnesses. (*People* v. *Ottey, supra,* 5 Cal.2d at p. 728; *People* v. *Moore* (1974) 40 Cal.App.3d 56, 65-66 [114 Cal.Rptr. 655].) No matter how overwhelming the evidence of guilt, "[t]he judge may not in the guise of comment control the verdicts by a direction either directly or impliedly made." (*People* v. *Brock, supra,* 66 Cal.2d at p. 650; *People* v. *Foster* (1971) 19 Cal.App.3d 649, 657; *People* v. *Farnum* (1966) 242 Cal.App.2d 310, 314-315 [51 Cal.Rptr. 327].) The ultimate responsibility for determining the guilt or innocence of the accused must remain with those in the jury box. "This principle is so well established that its basis is not normally a matter of discussion." (*United States* v. *Spock* (1st Cir. 1969) 416 F.2d 165, 180-181.)

It is difficult to draw a precise line of demarcation between those comments on the evidence which are authorized by article VI, section 10 and those which are not. (*People* v. *Ottey, supra,* 5 Cal.2d at p. 724; *People* v. *Shannon, supra,*

260 Cal.App.2d at p. 330.) Prior decisions have scrutinized judicial comments under a test that examines "the context and extent of the comments and the peculiar circumstances under which comment is made." (*People* v. *Flores* (1971) 17 Cal.App.3d 579, 584-585 [95 Cal.Rptr. 138]; *People* v. *Shannon, supra,* 260 Cal.App.2d at p. 330.)

■ There appear to be no California decisions involving circumstances identical to those of the present case in which the court's comments on the evidence were made after the jury reported that it was deadlocked.[8] However, two Court of Appeal decisions involving judicial comments during the course of jury deliberations are instructive.

In *People* v. *Flores, supra,* 17 Cal.App.3d 579, the jurors returned to the courtroom after deliberating approximately three hours. The foreman reported that the jury had not yet been able to reach a verdict and was divided five to seven. The trial court then analyzed the credibility of the two testifying witnesses, the defendant and the arresting officer, and stated its conviction as to the defendant's guilt. Thereupon, the jury continued its deliberations and rendered a guilty verdict.

The Court of Appeal reversed, concluding that "the comments of the court[,] made to the jury after it was advised that the jury was 'split five to seven,' were an error." (*Id.,* at pp. 583-584.) These comments, which were found to be tantamount to an argument for conviction, "had the effect of usurping the jury's constitutional function as the sole judge of the facts to determine defendant's guilt or innocence." (*Id.,* at pp. 584, 588.)

*People* v. *Moore, supra,* 40 Cal.App.3d 56 [114 Cal.Rptr. 655] involved circumstances similar to those of *Flores.* In *Moore,* the jury deliberated almost three hours before returning to the courtroom. The foreman informed the court that the jury was still considering the evidence and had not yet been able to agree to a verdict. Thereupon, the court reviewed the testimony of the witnesses and gave its opinion that the defendant was guilty of the charged offense. Less than two hours after resuming its deliberations, the jury convicted the defendant.

The Court of Appeal concluded that "the court's remarks . . . exceeded the constitutional authority conferred on trial judges to comment on the evidence"

[8]Many decisions involve judicial comments on the evidence made as part of the trial court's instructions prior to submission of the case to the jury. (See, e.g., *People* v. *Brock, supra,* 66 Cal.2d at p. 649; *People* v. *Friend, supra,* 50 Cal.2d at p. 574; *People* v. *Gosden* (1936) 6 Cal.2d 14, 26 [56 P.2d 211]; *People* v. *Smith* (1968) 267 Cal.App.2d 155, 162-163, fn. 1 [72 Cal.Rptr. 696]; *People* v. *Shannon, supra,* 260 Cal.App.2d at p. 325, fn. 2; *People* v. *Huff, supra,* 134 Cal.App.2d at p. 185.)

and reversed the defendant's conviction. (*Id.*, at p. 67.) Initially, the court found that the trial judge's review of the testimony was inaccurate. (*Id.*, at p. 65.) More important, however, was the fact that the comments occurred during the course of the jury's deliberations. This circumstance led the Court of Appeal to conclude that "the judge [had] usurped the jury's function" to decide the facts of the case. (*Id.*, at p. 67.)

Both *Flores* and *Moore* implicitly recognized that the timing of a trial court's remarks on the evidence is an important circumstance to consider in determining the impact of judicial comments on a jury. As this court observed in *Cooper* v. *Superior Court* (1961) 55 Cal.2d 291, 299-300 [10 Cal.Rptr. 842, 359 P.2d 274], the "coercive effect" of judicial comment is greater when the comments are made during the course of deliberations rather than "as a summing up at the conclusion of the testimony and counsel's arguments."

Comments made at a time when jury deliberations have resulted in a deadlock, as in the present case, are even more apt to be controlling. Abiding by the trial court's opinion will provide the deadlocked jury with an easy alternative to the arduous task of attempting to hammer out a unanimous decision. It is too much to expect that jurors who have honest opinions different from that of the more experienced trial judge will be able to hold to their positions after the trial court explains its views to them.[9]

This was recognized in an early decision of the Fourth Circuit Court of Appeals. (*Foster* v. *United States* (4th Cir. 1911) 188 F. 305.) There, the court explained that "[o]nce . . . the jurors are unable to agree as to their verdict, the slightest expression from the presiding judge as to the guilt or innocence of the defendant must necessarily have a controlling influence upon the minds of the jury . . . ." (*Id.*, at p. 309.) The rule adopted in *Foster* prohibited the trial court from expressing any opinion on the guilt or innocence of the accused "after the jury had retired and at a time when they had failed to agree as to their verdict." (*Ibid.*)[10]

[9]It is evident that cautionary instructions to the effect that the jury is the exclusive arbiter of the verdicts are insufficient to neutralize the potent effect of improper judicial comment. As the United States Supreme Court stated in *Bruton* v. *United States* (1968) 391 U.S. 123, 135 [20 L.Ed.2d 476, 484, 88 S.Ct. 1620], "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." Improper judicial comment on the evidence presents such a situation. (See *People* v. *Graham* (1958) 156 Cal.App.2d 525, 528 [319 P.2d 677]; *Commonwealth* v. *Archambault* (1972) 448 Pa. 90 [290 A.2d 72, 75].)

[10]This rule has since been superseded by a more far-reaching limitation on the federal trial court's power to comment on the evidence. In *United States* v. *Murdock* (1933) 290 U.S. 389, 394 [78 L.Ed. 381, 384-385, 54 S.Ct. 223], the United States Supreme Court prohibited federal judges from expressing opinions as to the guilt of defendants except when all the facts of the case are "undisputed and admitted" and only questions of law remain to be decided. (See also *Gant* v. *United States* (8th Cir. 1974) 506 F.2d 518, 521.)

Prohibiting trial courts from commenting on the evidence to a deadlocked jury also protects the salutary policies underlying this court's decision in *People* v. *Gainer* (1977) 19 Cal.3d 835 [139 Cal.Rptr. 861, 566 P.2d 997, 97 A.L.R.3d 73]. *Gainer* forbids a trial court from giving a deadlocked jury an instruction that "encourages jurors to consider the numerical division or preponderance of opinion of the jury in forming or reexamining their views on the issues before them." (*Id.*, at p. 852.)[11] The flaw of the disapproved instruction was that it exerted pressure on jurors who were in the minority to conform their opinions to those of the majority in the interests of convenience and expediency. The independent judgment of each juror on the factual issues of the case was likely to be displaced. (*Id.*, at pp. 849-850.)

The coercive nature of a trial court's comments on the evidence to a deadlocked jury is only slightly different. The comments tend to compel the jurors to harmonize their views with those of the judge, rather than with those of the majority. Nevertheless, the ultimate effect of the judicial conduct is the same as when the admonition to minority jurors is given. The accused is highly likely to be deprived of the right to have his guilt or innocence determined by the independent vote of each juror.

Thus, judicial comments to a deadlocked jury may well circumvent if not erode the safeguards established by this court in *Gainer*. Indeed, a trial court's remark that the prosecution's witnesses are more credible than those of the accused is apt to have an even greater coercive effect than an admonition to minority jurors to reconsider their views in light of the majority. It follows then that a prohibition on judicial comment to a deadlocked jury is not only consistent with *Gainer* but also necessary to preserve the values identified by that decision. (See also *People* v. *Crowley* (1950) 101 Cal.App.2d 71 [224 P.2d 748].)

That the trial court's comments deprived appellant of the individual judgment of each juror on the issue of his guilt or innocence is evident from the circumstances of this case. Here, the jurors deliberated for almost a day and a half without being able to reach a verdict on their own. Twice the forewoman indicated that further deliberations would be unfruitful. Ultimately, the jury turned to the court to resolve the deadlock, asking for an opinion on the credibility of McManus and her daughter.[12] The outcome of appellant's trial hinged on whether the jury believed these prosecution witnesses.

---

[11]*Gainer* also found it error for a trial court to inaccurately instruct deadlocked jurors that if they failed to agree to a verdict the case would have to be retried. (*Ibid.*)

[12]The record indicates that the jury's request for an opinion on the credibility of the prosecution witnesses was made in response to the trial court's prior remark that it was authorized to comment on the evidence.

Rather than declare a mistrial due to the deadlock, the trial court responded to the jurors' request with lengthy and forceful comments on the evidence. The court's statements concerned not only the credibility of the prosecution witnesses, but also identified a motive for appellant to have committed the crime and informed the jurors of the verdict it believed should be reached.

Three times during the comments, the trial court expressed its opinion that the testimony of the prosecution witnesses was truthful. These statements were supported by the court's extensive analysis of the same factors which the jury had previously been instructed to consider in assessing the credibility of McManus and her daughter.

The trial court was also emphatic in explaining to the jury that appellant had reason to commit the charged offense. The judge found that appellant "in fact ha[d] a motive to go to [McManus' home] and tell her to knock it off" since appellant's "natural inclination" was to protect his brother in the capital murder proceeding.

Finally, on three separate occasions, the trial court stated unequivocally that the testimony of the prosecution witnesses established that appellant had uttered the alleged threats. Typical of the nature of these comments is the following statement of the judge. "[I]t satisfies this court beyond a reasonable doubt that [the prosecution has] established the elements necessary and therefore I would be willing to arrive at a verdict in this matter."

That the jury relied on the court's opinion in resolving its deadlock is evident from the swiftness with which the jury agreed to the guilty verdict after the remarks were made. It is inconceivable that in the 14 minutes of further deliberations the jurors had sufficient time to conduct either a rational or thorough evaluation of the trial court's opinion and reach an independent conclusion concerning the evidence. Thus, the jury did not function as the sole and exclusive arbiter of the credibility of the prosecution witnesses and the guilt or innocence of appellant. The trial court's remarks exceeded the scope of proper judicial comment permitted by section 10 of article VI, and interfered with appellant's constitutional right to a jury trial. (*People* v. *Moore, supra,* 40 Cal.App.3d at pp. 65-67.) Reversal of appellant's conviction is, therefore, mandatory. (*Id.,* at p. 67; cf. *People* v. *Holmes* (1960) 54 Cal.2d 442 [5 Cal.Rptr. 871, 353 P.2d 583]; see generally, Witkin, Cal. Criminal Procedure (1963) § 764, pp. 736-737.)

 This court is also urged to hold that a trial judge may not express his or her views concerning the ultimate question of an accused's guilt or innocence at any stage of the proceedings. Appellant's contention has merit. Article VI, section 10 merely authorizes "comment on the evidence and the testimony and

credibility of . . . witness[es]." It does not permit a trial court to suggest to the jury that they return a particular verdict. Nor may the trial court directly express its opinion on the ultimate factual issue of the accused's guilt or innocence.[13] Such comment does not assist the jury in properly considering the evidence and reaching a just and independent result. Rather, when a trial court indicates to the jury that it believes the accused is guilty, it necessarily interferes with the jurors' ability to freely perform their fact-finding responsibility. In the present case, it is unnecessary to determine whether the erroneous statements concerning appellant's guilt were prejudicial, since this court has already concluded that reversal of the conviction is required.

### III.

While section 10 of article VI permits judicial comment on the evidence, it does not authorize the trial court to usurp the function of the jury as the exclusive trier of fact. (*People* v. *Brock, supra,* 66 Cal.2d at pp. 650-651; *People* v. *Moore, supra,* 40 Cal.App.3d at pp. 65-67; *People* v. *Flores, supra,* 17 Cal.App.3d at pp. 583-584.) Comment at a time when the jury is deadlocked is so likely to invade the jury's province and control its verdict that such comment must be deemed erroneous.

The judgment of conviction is reversed.

Mosk, J., Broussard, J., and Spencer, J.,* concurred.

**KAUS, J.**—I concur in the result. It is good that the court takes the bull by the horn and overrules the dicta which permit a trial court to express its view on the ultimate question—whether the defendant is, in fact, guilty. The Constitution merely permits "comment on the evidence and the testimony and credibility of witnesses." This is a far cry from allowing judicial intrusion at the ultimate moment of truth when each juror must ask himself whether he has a reasonable doubt concerning the defendant's guilt. True, courts must judge whether the evidence "could reasonably support a finding of guilt beyond a reasonable doubt" (*Jackson* v. *Virginia* (1979) 443 U.S. 307, 318 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781]), or, in the California formulation, " 'whether a reasonable trier

---

[13]Contrary dicta contained in prior decisions (see *People* v. *Brock, supra,* 66 Cal.2d 645; *People* v. *Friend, supra,* 50 Cal.2d at p. 578 and cases cited therein) are overruled.

This conclusion reached by today's opinion is in accord with the view of the overwhelming majority of other jurisdictions. (See, e.g., *Commonwealth* v. *Archambault, supra,* 290 A.2d at p. 73; see generally, Comment, *Power to Comment on the Issue of Guilt: Trial by Jury or Trial by Judge* (1964) 9 Vill.L.Rev. 440; Note, *Trial Judge's Right to Comment on Evidence Pertaining to Punishment in Capital Offense Case* (1959) 32 So.Cal.L.Rev. 311, 311; 23 C.J.S., Criminal Law, § 993, p. 1022.)

*Assigned by the Chairperson of the Judicial Council.

of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt.'" (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576-578 [162 Cal.Rptr. 431, 606 P.2d 738].) Yet, saying that a given state of the evidence justifies a reasonable juror in *not* having a reasonable doubt, is quite different from telling that juror that if he *does* harbor such a doubt, he and the court are in disagreement. The truth is that the tidiest, most conclusive prosecution case may contain undefinable flaws which a particular juror cannot reconcile with the constitutionally demanded standard of proof. (*In re Winship* (1970) 397 U.S. 358, 361-364 [25 L.Ed.2d 368, 373-375, 90 S.Ct. 1068].) In *Winship* the court quoted with approval from *Davis* v. *United States* (1895) 160 U.S. 469, 493 [40 L.Ed. 499, 507, 16 S.Ct. 353]: "No man should be deprived of his life under the forms of law unless the jurors who try him are able, *upon their conscience,* to say that the evidence before them . . . is sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged." (Italics added.)

When a trial court departs from comments on evidence and credibility and states its views on the ultimate question of guilt, it trespasses on forbidden ground—the conscience of each juror.[1]

On the other hand I cannot join the wholesale condemnation of exercising the privilege of comment after a jury deadlock has been reached. I respectfully submit that while a unanimous verdict after comment may dramatically prove the power of comment, the difference in coercive effect between postdeadlock intervention and predeliberation comment is more apparent than real. In most cases early comment—if it has any effect—simply avoids a deadlock from arising in the first place. Therefore—if it mattered—I would prefer to say that generally the power of unsolicited but proper, temperate and balanced comment is not diminished by having been passed up before the beginning of deliberations.[2]

---

[1]The American Bar Association Project on Minimum Standards for Criminal Justice, while advocating that trial courts be given the authority to summarize and comment on the evidence, at the same time takes the position that "[t]he court 'may not suggest a verdict of guilty or not guilty, nor may the court directly express an opinion on the guilt or innocence of the defendant.'" (ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury (Approved Draft 1968) std. 4.7(b)(ii), pp. 121, 126-127.)

[2]The majority relies on *People* v. *Flores* (1971) 17 Cal.App.3d 579 [95 Cal.Rptr. 138] and *People* v. *Moore* (1974) 40 Cal.App.3d 56 [114 Cal.Rptr. 655] to support its establishment of a special rule barring all postdeadlock comment. In neither case, however, did the court suggest that the timing of the judicial comment was the fatal flaw. Instead, both courts found that the trial courts had erred in going beyond a fair comment on the evidence and expressing a definite opinion on the ultimate question of the defendants' guilt. (17 Cal.App.3d at pp. 583-588; 40 Cal.App.3d at pp. 65-67.) In addition, the *Moore* trial court had misstated the facts in several respects. (40 Cal.App.3d at p. 65.)

In this case, however, it does not matter. The court did not comment until after the jury had expressly asked it to do so. Why deny the court the power to assist the jury when assistance is needed most—when the jury asks for help? In many cases where the court comments before the jury starts its deliberations, its remarks are unhelpful at best or coercive at worst. Where the jury asks for guidance we know that the first alternative, at least, need not worry us.

**RICHARDSON, J.,** Concurring and Dissenting.—I concur in the majority's conclusion that, in this case, the extent and nature of the trial judge's comments improperly invaded the jury's sphere. A judge's comments must be scrupulously fair and may not usurp the jury's role as the exclusive trier of fact. When a jury is deadlocked the chances that a judge's comments on the evidence may affect the jury's deliberations may well be increased, and we should rigorously scrutinize the judge's remarks. Here the jury had been deadlocked. The probability that the court's statements improperly affected the jury here is underscored by the fact that only 14 minutes after the comments the well established deadlock dissolved and the jurors arrived at an unanimous verdict. Under these facts, I therefore would find that the judge's comments improperly intruded upon the jury's function as ultimate factfinder and would, accordingly, reverse the judgment.

I respectfully dissent, however, from the majority's sweeping principle that a judge may *never* comment upon the evidence when the jury is deadlocked. This goes too far. The people of California have ordained in their *Constitution* that "The court may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause." (Cal. Const., art. VI, § 10.) While compelled to acknowledge this constitutional grant of authority to the trial courts, my colleagues nonetheless add their own judicial language to the section and thereby substantially narrow the extent of the trial court's authority. In contrast, I would retain the case-by-case approach which we have historically followed in considering claims such as those herein advanced. The successful and consistent application of this method is amply demonstrated by the cases cited by the majority.

We are presented here with a *constitutional* provision containing no internal limitations as to when a judge may comment on the evidence. We should not, in advance, forever close the door to evidentiary comments at any particular stage of trial. It is entirely possible that under different circumstances such judicial comment might be altogether appropriate. I would avoid the majority's broad generalizations, and limit our review to a case-by-case resolution, not being able fairly to anticipate the multiple factual variants which may give rise to the issue. Particularly, I would avoid engrafting our own judicial limitations on the

wide procedural authorization which the people themselves have placed in their fundamental charter.

Reynoso, J., concurred.