[No. B001276. Second Dist., Div. Five. Dec. 13, 1984.]

EDWARD B. LEWIS, JR., Plaintiff and Appellant, v.
BILL ROBERTSON & SONS, INC., Defendant and Respondent.

Counsel

Royce & Seaman, Carol E. Freis and Gordon J. Zuiderweg for Plaintiff and Appellant.

Bodkin, McCarthy, Sargent & Smith, Michael A. Branconier and Toni M. Oberscheven for Defendant and Respondent.

Opinion

**FEINERMAN, P. J.**—The sole issue on appeal is whether judicial misconduct in this personal injury case denied appellant a fair trial. Appellant contends that the prejudicial comments of the trial judge constituted reversible error. We agree and reverse the judgment.

On the morning of August 23, 1977, appellant went to respondent's motorcycle dealership to look at a motorcycle he was thinking of purchasing. He attempted to take a shortcut into the lot by stepping over a chain which partially enclosed the premises. Appellant fell while transversing the barrier and seriously injured his left arm. Conflicting testimony existed as to whether it was appellant's alleged careless behavior which caused the fall or whether the uneven surface of the lot caused him to lose his balance.

After closing arguments, the trial judge said he would exercise his state constitutional authority to comment "on the evidence and the testimony and credibility of any witness." He stated that his remarks were intended to be advisory only and could therefore be disregarded if the jury's view of the case failed to coincide with his views. The judge further indicated that in 22 years on the bench, he had never before stated his view of a case to a jury, but he intended to do so in this case because it was "unusual."

The judge began his review of the appellant's case by telling the jurors they had just received an impassioned plea for prejudice and passion which was in no way based on the evidence. This, he said, was the court's opinion and the opinion of a judge "not as a judge but just as a person." In particular, he felt that appellant's closing argument obscured the issue of whether damages should be awarded by making an emotional appeal for punishment.

The judge again cautioned that his opinions were not binding and reminded the jurors that they were the sole judges of the facts. He then opined the following: (1) Ninety percent of all auto places have chains around them and anyone over eight years of age knew that chains were meant to keep

people out; (2) the argument that appellant could not have used a safer entrance was entirely a smoke screen to cloud over the legal elements of negligence and to give the impression that respondent did not care about his customers; (3) there was no horrendous pain and suffering in a broken arm that had healed perfectly; and (4) the court never heard appellant's doctor say that appellant's injury would lead to permanent pain. The judge concluded these observations with a statement that regardless of whether or not his comments were meaningful to the jurors, that the jury should look at the evidence in the case.

The court then asserted that even if damages were found owing, that appellant used a false per diem method of calculating the appropriate sum. The court then repeated that his comments were not those of a judge but just of a person sitting and listening to the case. The court stated that the jury was "perfectly free" to ignore the remarks he had made "according to the evidence."

The court then summarized its perspective on the case: The judge said he thought the accident occurred because appellant tried to get over a chain on the motorcycle dealer's lot and that "no defect in this premises had anything to do with his fall." That was the court's opinion, he said, "just as one extra juror in this case." Moreover, he continued, any damages assessed should not be based upon appellant's original injury. Rather, it should be based upon any possible aggravation of the injury when an employee at the dealership moved appellant's arm to test whether appellant was really hurt. However, the court told the jurors that if they felt that a defect in the premises did cause the appellant's fall, that they could award appellant the full damages he requested, even though the means of computing them was not to the court's liking.

After instructing the jurors on negligence and contributory negligence, the court reiterated its belief that the original injury was not caused by a defect in respondent's premises. The judge closed by saying that the jurors could ignore his comments and tell him to "go jump in a lake" because that was the right and duty of the jury if they felt the court was wrong. He might be "stuck" with his own opinions, stated the judge, but the jurors were not.

After a series of general jury instructions, the jury began its deliberations late Friday afternoon. The following Monday morning, appellant's attorney requested that the court give the jury an additional instruction that the jurors disregard comments made by the judge after closing arguments, or, alternatively, that the court declare a mistrial.

Appellant's request was refused. The trial judge observed that the jury had earlier asked that the statements made by the judge starting with

" '[D]uring my 24 [*sic*] years on the bench I have never . . .' " be reread and that he had sent a message back to the jurors saying, "Completely irrelevant to the jury's duties." The jury returned a nine-to-three verdict favoring the respondent.

## DISCUSSION

▇▇ Appellant contends that the trial judge's comments after closing arguments exceeded the bounds of proper judicial conduct, denied him a fair trial, and constituted prejudicial error. He asserts that the court's remarks predetermined the verdict even though the court admonished the jury that the judge's observations were only advisory and the jurors were the sole judges of the facts. Appellant argues that while individual comments made by the court might not constitute misconduct, that the cumulative impact of the various statements made by the trial judge poisoned the well.

▇▇ Article VI, section 10 of the California Constitution provides that "[t]he court may make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause." This provision allows the trial judge to use his experience and training in evaluating the evidence, so as to aid the jury in reaching a just verdict. (*People* v. *Cook* (1983) 33 Cal.3d 400 [189 Cal.Rptr. 159, 658 P.2d 86].) The court's function in this regard goes well beyond a colorless recital of the evidence. A judge may analyze all or part of the testimony and express his views with respect to its credibility. (*People* v. *Friend* (1958) 50 Cal.2d 570, 577 [327 P.2d 97], overruled on other grounds in *People* v. *Cook* (1983) 33 Cal.3d 400, 413, fn. 13 [189 Cal.Rptr. 159, 658 P.2d 86]; *Schnear* v. *Boldrey* (1971) 22 Cal.App.3d 478, 483 [99 Cal.Rptr. 404].)

▇▇ Nevertheless, a judge's power to comment on the evidence is not unlimited. He cannot withdraw material evidence from the jury or distort the testimony, and he must inform the jurors that they are the exclusive judges of all questions of fact and of the credibility of the witnesses. (*People* v. *Friend, supra,* 50 Cal.2d at pp. 577-578; *Schnear* v. *Boldrey, supra,* 22 Cal.App.3d at p. 483.) In civil cases, the court's powers of comment are less limited than in criminal cases, but they still must be kept within certain bounds. The court may express an opinion on negligence, but the court's remarks must be appropriate and fair. (*Clark* v. *Laughlin* (1977) 68 Cal.App.3d 506, 513 [137 Cal.Rptr. 354].)

▇▇ The record here discloses that the trial judge failed to comply with the limitations suggested by other cases. In *Clark* v. *Laughlin, supra,* 68 Cal.App.3d 506, the court found no judicial misconduct in the judge's ob-

servation to the jury that the defendant in a malpractice suit had negligently breached his duty of care. There, however, the trial court carefully indicated that it was not commenting on the crucial issues of proximate cause, damages or credibility. (*Id.,* at p. 513.)

In the instant case, the court specifically told the jury that the question in issue was whether any defect in the premises caused appellant's accident. The judge then voiced his belief "that no defect in this premises had anything to do with his fall" and "that the original injury was not caused by any defect in these premises."

Not only did the trial judge in this case comment on the crucial issue of proximate cause (*Clark* v. *Laughlin, supra,* 68 Cal.App.3d at p. 513), but he distorted the testimony with regard to damages. The court asked, "[w]here is the horrendous pain and suffering in a broken bone that has 'healed perfectly?'" The judge then remarked, "I have not heard the doctor say that he said this was a painful injury. I did not hear the doctor say that this leads to permanent pain on a broken bone that is healed perfectly."

Uncontroverted expert testimony demonstrated that appellant sustained permanent damage from his fall. The evidence indicated that appellant would always have moderately restricted motion in his left arm and attendant residual pain, weakness of grip and atrophy around the shoulder joint. His shoulder would be permanently misaligned and subject to progressive arthritis and osteoporosis. To say, as the trial judge did, that appellant's arm "healed perfectly" is a misstatement of the evidence presented.

It is true that the court did intersperse its comments on damages and causation with reminders that the jurors were the sole judges of the facts and that the trial judge's opinions were not binding. Yet, even these reminders were confusing at times, and there is substantial evidence to suggest that the jurors could not readily disregard his comments or unring the proverbial bell.

On the one hand, the trial judge maintained that he was exercising the court's constitutional right to comment on the evidence and testimony in the case. On the other hand, the judge figuratively put aside his robes and advised the jury that his opinions were "not as a judge but just as a person." He was assertedly reviewing the evidence "just as one extra juror in this case."

Clearly, the judge put the weight of his judicial position and experience behind his observations. He said that in 22 years on the bench he had never before commented on a case to the jury but was presumably moved to do

so now because this case was "unusual" and appellant's "plea for prejudice and passion" was "not based upon the vidence [*sic*] whatsoever in this case." Although the court's parting words to the jury were that they were "perfectly free" to disregard his opinions as they began their deliberations, the jury retired with a very mixed message: It's "your right, and your duty" to ignore what the judge has said if you think he is wrong, but "[y]ou will look at the evidence in the way a judge hopefully does," and what this judge saw was that appellant's injury was not caused by a defect in defendant's premises.

What apparently remained in the juror's minds was not the court's instruction that they alone should judge the facts, but the judge's strong views on whether there was proof of negligence. The jury began deliberations at 3:45 on a Friday afternoon and adjourned at 4:15 until the following Monday morning. They had a weekend to forget the judge's "advisory" opinions, but they evidently could not do so. About 9:55 a.m. on Monday, appellant asked that the jury be given an additional instruction to disregard the judge's comments. In refusing that request, the court noted that it had denied the following jury request earlier that morning: "Need to have reread statements made by judge starting with, 'during my 24 years on the bench, I have never . . . .'" The court sent a message back to the jury stating, "'[c]ompletely irrelevant to the jury's duties.'"

■ While section 10 of article VI of the state Constitution permits judicial comment on the evidence, it does not authorize the trial court to usurp the function of the jury as the exclusive trier of fact. (*People* v. *Cook, supra,* 33 Cal.3d 400.) The court may evaluate testimony, but it cannot misrepresent the evidence or engage in partisan advocacy. (*Id.,* at p. 408.)

In a discussion with attorneys outside the jury's presence, the judge made clear that he felt that appellant's counsel had used "dirty tricks" to mislead the jury. He also stated that he disliked the way appellant had been coached to face the jury and the way in which he "grimaced and sneered at witnesses."

In addition, the court stated that defense counsel had failed to do his job properly. The trial judge admonished the defense attorney for not objecting to prejudicial hearsay throughout the trial and suggested that he "read the Evidence Code" before attempting to defend other clients.

■ The judge went on to call himself "an old fashion judge who believes that justice means the truth, not trickery." While this is an admirable attitude, the court seems to have let the passion of its convictions interfere with its duty to be scrupulously fair and to not invade the province of the

jury as the exclusive trier of fact. (*People* v. *Cook, supra,* 33 Cal.3d at p. 408; *People* v. *Friend, supra,* 50 Cal.2d at pp. 577-578.) Trial judges should heed Isabella's admonition in Shakespeare's Measure for Measure, act II, scene 2, when she declares: "O it is excellent to have a giant's strength; but it is tyrannous to use it like a giant."

The cumulative impact of the court's comments may well have swayed the opinion of at least one of the nine jurors finding against appellant. We believe the court removed the verdict from the jury when it indicated that no evidence existed to show that a defect on defendant's premises caused appellant's injury and when it misrepresented evidence on the character of the damages involved. Absent judicial misconduct, it is reasonably probable that a more favorable verdict would have been rendered. (*People* v. *Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243].)

The judgment is reversed.

Ashby, J., and Hastings, J., concurred.